**LINDA LOPEZ**
Florida Bar No. 0177301
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
E-Mail: linda_lopez@fd.org

Attorneys for Mr. Julio Martinez-Hernandez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 07CR3101-LAB |
| Plaintiff, ) | DATE: December 17, 2007 |
| ) | TIME: 2:00 p.m. |
| v. ) | |
| ) | STATEMENT OF FACTS AND |
| JULIO MARTINEZ-HERNANDEZ, ) | MEMORANDUM OF POINTS AND |
| ) | AUTHORITIES IN SUPPORT OF |
| Defendant. ) | DEFENDANT'S MOTIONS |
| ) | |

**I.**

**STATEMENT OF FACTS[1]**

On October 13, 2007, Senior Patrol Agent Lee A. Miller allegedly observed a group of individuals climb over the International Boundary Fence and run north toward the "Elbow." The Elbow is located approximately 1.5 miles west of the San Ysidro, California Port of Entry and 400 yards north of the United States / Mexico International Boundary Fence.

While another Border Patrol Agent apprehended two of the individuals, Agent Miller began a pursuit of another individual whom he believed to have been one of the four earlier observed climbing over the International Boundary Fence. An individual later identified as Julio Martinez-Hernandez was apprehended

---

[1] The following statement of facts is based on discovery produced by the government, which Mr. Martinez-Hernandez reserves the right to challenge at a later date.

and charged, by way of Indictment, with attempted entry after deportation in violation of Title 8, U.S.C. §§1326 (a) and (b).

## II.

## MOTION TO COMPEL DISCOVERY

Mr. Martinez-Hernandez requests the following discovery. His request is not limited to those items that the prosecutor knows of. It includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." *See United States v. Bryan*, 868 F.2d 1032 (9th Cir. 1989).

(1)  Brady Information. The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Under *Brady v. Maryland*, 373 U.S. 83 (1963), impeachment, as well as exculpatory evidence, falls within the definition of evidence favorable to the accused. *United States v. Bagley*, 473 U.S. 667 (1985); *United States v. Agurs*, 427 U.S. 97 (1976).

(2)  Any Proposed 404(b) Evidence. The government must produce evidence of prior similar acts under FED. R. CRIM. P. 16(a)(1) and FED. R. EVID. 404(b) and any prior convictions which would be used to impeach as noted in FED. R. CRIM. P. 609. In addition, under FED. R. EVID. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under FED. R. EVID. 404(b) at trial. The defendant requests notice two weeks before trial to give the defense time to investigate and prepare for trial.

(3)  Request for Preservation of Evidence. The defendant requests the preservation of all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relate to the arrest or the events leading to the arrest in this case. This request includes, but is not limited to, the results of any fingerprint analysis, the defendant's personal effects, and any evidence seized from the defendant or any third party.

(4)  Defendant's Statements. The defendant requests disclosure and production of all statements made by the defendant. This request includes, but is not limited to, the substance of any oral statement made

by the defendant, FED. R. CRIM. P. 16(a)(1)(A), and any written or recorded statement made by the defendant. FED. R. CRIM. P. 16(a)(1)(B)(I)-(iii).

(5) <u>Tangible Objects</u>.  The defendant seeks to inspect and copy, as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, alleged narcotics, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to the defendant.  FED. R. CRIM. P. 16(a)(1)(E).  **This request specifically incorporates a request for a copy of Mr. Martinez-Hernandez' "A-File" and any tapes of any deportation hearing involving Mr. Martinez-Hernandez.**

(6) <u>Expert Witnesses</u>.  The defendant requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief.  FED. R. CRIM. P. 16(a)(1)(G).

(7) <u>Witness Addresses</u>.  The defendant requests access to the government's witnesses.  Thus, counsel requests a witness list and contact phone numbers for each prospective government witness.  Counsel also requests the names and contact numbers for witnesses to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will <u>not</u> be called as government witnesses.

(8) <u>Jencks Act Material</u>.  Mr. Martinez-Hernandez requests production in advance of trial of material discoverable under the Jencks Act, 18 U.S.C. § 3500.  Advance production will avoid needless delays at pretrial hearings and at trial.  This request includes any "rough" notes taken by the agents in this case.  This request also includes production of transcripts of the testimony of any witness before the grand jury.  *See* 18 U.S.C. § 3500(e)(1)-(3).

(9) <u>Informants and Cooperating Witnesses</u>.  Mr. Martinez-Hernandez requests disclosure of the name(s), address(es), and location(s) of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Martinez-Hernandez.  *Roviaro v. United States*, 353 U.S. 52, 61-62 (1957).  The government must disclose any information derived from informants which exculpates or tends to exculpate Mr. Martinez-Hernandez.  *Brady v. Maryland*, 373 U.S. 83 (1963).  The government must disclose any information indicating bias on the part of any informant or cooperating witness.  *Id.*

1      (10)   Residual Request.  Mr. Martinez-Hernandez intends by this discovery motion to invoke his
2 rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the
3 Constitution and laws of the United States.

**III.**

**THE COURT MUST SUPPRESS ANY STATEMENTS BY MR. MARTINEZ-HERNANDEZ**

The material produced thus far by the government indicates that Agent Miller first confronted and interrogated Mr. Martinez-Hernandez, regarding his immigration status, sometime after 5:20 a.m. in an isolated area north of the International Border. This entire interrogation proceeded any form of administration of Miranda rights by the agents.

"The ruling in Miranda prohibits 'custodial interrogation' unless the government first gives warnings to the [subject of the interrogation]." United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1046 (9th Cir. 1990).  Custodial interrogation occurs when under the totality of the circumstances the questions asked by the police are reasonably likely to elicit an incriminating response from the subject. Id.  Although questions that include routine biographical information usually do not trigger the safeguard of Miranda v. Arizona, "[t]hat exception is inapplicable . . . where the elicitation of information regarding immigration status is reasonably likely to inculpate the [subject]." Id.

In United States v. Kim, 292 F.3d 971, 973 (9th Cir. 2002),[2] the Ninth Circuit noted that the following factors are to be considered in deciding whether or not a police-dominated atmosphere exists:  "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention;  and (5) the degree of pressure applied to detain the individual." Id. (citations omitted); see also United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980) (in context of custody at the border "[t]he factors to be weighed are the language used to summon him, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and the pressure exerted to detain him."). The Ninth Circuit also

---

[2] In Kim, the Ninth Circuit found that a Korean woman who went to her own store, voluntarily, because an officer's visit prompted her to do so was in custody even though she was in familiar surroundings because the police "temporarily took over complete control of Kim's store creating a 'police-dominated atmosphere." 292 F.3d at 977.  This combined with difficulty with English and isolation from family supported the finding that Kim did not willingly agree to submit to an encounter with the police. Id.

recognizes that "question[s] implying that [the agent] suspected [the defendant] of criminal activity" can give rise to a reasonable belief that one is not free to ignore the questions and leave. United States v. Chavez-Valenzuela, 268 F.3d 719, 725 (9th Cir. 2001).[3]

It is not necessary that an individual be physically restrained in any fashion. In Beraun-Panez, the Ninth Circuit found that an individual questioned out in an open field, who was neither held nor handcuffed nor told that he was under arrest, was nonetheless in custody for Miranda purposes. Beraun-Panez held that "[a]lthough not physically bound, Beraun-Panez was subjected to psychological restraints just as binding." 812 F.2d at 580.[4]

Here, the criteria for a police-dominated atmosphere as articulated in Kim are clearly met. Regarding the language used by Agent Miller to summon Mr. Martinez-Hernandez, Agent Miller made it quite clear to Mr. Martinez-Hernandez that he was a border patrol agent. This was at least one of the means used by Agent Miller to get Mr. Martinez-Hernandez into custody. Mr. Martinez-Hernandez, having found himself under the control of Agent Miller, injured as a result of the manner in which the detention occurred, and in an isolated area with no means to escape, substantiate this factor.

Concerning the extent to which Mr. Martinez-Hernandez was confronted with guilt, he was apprehended in an isolated area and immediately interrogated about his immigration status. The physical surrounding of the interrogation was clearly a remote area as evidenced by the reports description as the "Elbow" and devoid of any landmarks such as homes or businesses. It is, however, unclear how long the detention took place or the amount of pressure applied to Mr. Martinez-Hernandez since Agent Miller's report does not address how long the interrogation and detention took. Further, the defendant in Kim was isolated from family, a fact that the Court gave great weight to. Kim, 292 F.3d at 977. Here, Mr. Martinez-Hernandez was alone in a remote and rural area, as in Beraun-Panez, with a border patrol agent in a government vehicle, while he was on foot. Thus, the statements must be suppressed.

Not only did the questioning here occur in a "police-dominated atmosphere" where Mr. Martinez-Hernandez was isolated, the agent's questioning bore on Mr. Martinez-Hernandez' alienage, which is an

---

[3] Chavez-Valenzuela involved a roadside stop of a motorist on a public street, out in the open.

[4] The police confronted Beraun-Panez with his alienage, accused him of lying and kept him separated from his co-worker in a remote rural area. Beraun-Panez, 812 F.2d at 580.

1 element of the charged offense, 8 U.S.C. § 1326.  See United States v. Meza-Soria, 935 F.2d 166, 171 (9th
2 Cir. 1991).  This question in such a setting carried with it implicit suspicion of criminal activity. A person,
3 such as Mr. Martinez-Hernandez, subjected to such questioning in such a situation obviously does not
4 reasonably feel free to leave, and thus is subject to custodial interrogation. See Chavez-Valenzuela, 268 F.3d
5 719, 725 (9th Cir. 2001).

6       In the context of an encounter between border patrol and an individual near the international border,
7 any questioning regarding an individual's alienage falls under the rubric of custodial interrogation.
8 Furthermore, because of the close relationship between civil and criminal immigration investigations, "[c]ivil
9 as well as criminal interrogation of in-custody defendants by INS [agents] should generally be accompanied
10 by the Miranda warnings." United States v. Mata-Abundiz, 717 F.2d 1277, 1279 (9th Cir. 1983).

11       In United States v. Gonzalez-Sandoval, 894 F.2d at 1043 (9th Cir. 1990), the defendant appeared at
12 a local police station to provide his state parole officer with a urine sample. Id. at 1046. A second parole
13 officer accused Mr. Gonzalez-Sandoval of being a deported alien and called the Border Patrol. Id. The
14 Border Patrol came to the station, and without warning him pursuant to Miranda, asked Mr. Gonzalez-
15 Sandoval where he was born and whether he possessed documents to verify the legality of his presence in the
16 United States. Id. The Border Patrol agents then took Mr. Gonzalez-Sandoval to the Calexico Border Patrol
17 Station. Failing to administer the Miranda warnings a second time, the agents questioned Mr. Gonzalez-
18 Sandoval about any alias he possessed. Id. The agents ran an INS record check against Mr. Gonzalez-
19 Sandoval's name and alias, and found Mr. Gonzalez-Sandoval's prior immigration record. Id. The Ninth
20 Circuit found that the district court erred in failing to suppress the unwarned, prompted statements by
21 Mr. Gonzalez-Sandoval about his name and alias. Id. at 1047.

22       In United States v. Mata-Abundiz, an INS agent visited the defendant in a state jail to obtain
23 biographical information to determine the defendant's citizenship status. 717 F.2d at 1278. The agent knew
24 about the state charges against Mr. Mata-Abundiz, and did not warn him pursuant to Miranda prior to
25 obtaining the biographical data. Id. Afterwards, the agent made further inquiries at his office and within
26 three hours returned to the jail to charge Mr. Mata-Abundiz with a federal immigration offense. Id. Despite
27 the fact that the agent characterized his interrogation as pursuant to a civil investigation, the court held that
28

the agent should have warned Mr. Mata-Abundiz as required by <u>Miranda</u> because the agent knew his interrogation could lead to federal charges against the defendant. <u>Id.</u> at 1278-79.

Here, it is obvious that the information the agent elicited from Mr. Martinez-Hernandez, during the interrogation, regarding his citizenship and application for permission to enter was "reasonably likely to inculpate" him. The questions served no purpose other than inculpation. They are in fact two of the four elements that they government must prove to obtain a conviction for a violation of 8 U.S.C. § 1326. Moreover, it is undisputed that Mr. Martinez-Hernandez was not read his <u>Miranda</u> rights at that point, nor advised that his answers to the agent's questions could result in federal charges against him. Therefore, statements must be suppressed.

## IV.

## **REQUEST FOR LEAVE TO FILE FURTHER MOTIONS**

Mr. Martinez-Hernandez and defense counsel have received **96 pages of discovery** in this case. As new information surfaces due to the government providing discovery in response to these motions or an order of this Court, the defense may need to file further motions. Therefore, defense counsel requests the opportunity to file further motions.

## V.

## **CONCLUSION**

For the foregoing reasons, Mr. Martinez-Hernandez respectfully requests that the Court grant the above motions.

Respectfully submitted,

DATED:   December 11, 2007         */s/ Linda Lopez*
                                   **LINDA LOPEZ**
                                   Federal Defender of San Diego, Inc.
                                   Attorneys for Mr. Martinez-Hernandez

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of her information and belief, and that a copy of the foregoing document has been served this day upon:

**Arnold Dale Blankenship**
Dale.Blankenship@usdoj.gov,Jacquelyn.Mason2@usdoj.gov,efile.dkt.gc1@usdoj.gov

Dated: December 11, 2007                                              */s/ Linda Lopez*
                                                                                    **LINDA LOPEZ**
                                                                                    Federal Defenders of San Diego, Inc.
                                                                                    225 Broadway, Suite 900
                                                                                    San Diego, CA 92101-5030
                                                                                    (619) 234-8467  (tel)
                                                                                    (619) 687-2666  (fax)
                                                                                    e-mail: Linda_Lopez@fd.org