**LINDA LOPEZ**
California Bar No. 0177301
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Linda_Lopez@fd.org

Attorneys for Mr. Julio Martinez-Hernandez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 07CR3101-LAB |
| Plaintiff, | ) | DATE: DECEMBER 17, 2007 |
| | ) | TIME: 2:00 P.M. |
| v. | ) | |
| JULIO MARTINEZ-HERNANDEZ, | ) | STATEMENT OF FACTS AND |
| | ) | MEMORANDUM OF POINTS AND |
| Defendant. | ) | AUTHORITIES IN SUPPORT OF MOTIONS |

**I.**

**STATEMENT OF FACTS**[1]

On October 13, 2007, Senior Patrol Agent Lee A. Miller allegedly observed a group of individuals climb over the International Boundary Fence and run north toward the "Elbow." The Elbow is located approximately 1.5 miles west of the San Ysidro, California Port of Entry and 400 yards north of the United States / Mexico International Boundary Fence.

While another Border Patrol Agent apprehended two of the individuals, Agent Miller began a pursuit of another individual whom he believed to have been one of the four earlier observed climbing over the International Boundary Fence. An individual later identified as Julio Martinez-Hernandez was apprehended

---

[1] The following statement of facts is based on discovery produced by the government, which Mr. Martinez-Hernandez reserves the right to challenge at a later date.

1  and charged, by way of Indictment, with attempted entry after deportation in violation of Title 8, U.S.C.
2  §§1326 (a) and (b).
3     This motion follow.

## II.

**THE INDICTMENT SHOULD BE DISMISSED BECAUSE JUDGE BURNS' INSTRUCTIONS AS A WHOLE PROVIDED TO THE JANUARY 2007 GRAND JURY RUN AFOUL OF BOTH *NAVARRO-VARGAS* AND *WILLIAMS* AND VIOLATE THE FIFTH AMENDMENT BY DEPRIVING MR. MARTINEZ-HERNANDEZ OF THE TRADITIONAL FUNCTIONING OF THE GRAND JURY**

**A.     Introduction.**

The indictment in the instant case was returned by the January 2007 grand jury. See CR at 6.[2] That grand jury was instructed by this Court on January 11, 2007. See Reporter's Partial Transcript of the Proceedings, dated January 11, 2007, a copy of which is attached hereto as Exhibit A. This Court's instructions to the impaneled grand jury deviate from the instructions at issue in the major Ninth Circuit cases challenging a form grand jury instruction previously given in this district in several ways.[3] These instructions compounded this Court's erroneous instructions and comments to prospective grand jurors during voir dire of the grand jury panel, which immediately preceded the instructions at Ex. A. See Reporter's Transcript of Proceedings, dated January 11, 2007, a copy of which is attached hereto as Exhibit B.[4]

//
//
//
//

---

[2] "CR" refers to the Clerk's Record in Case Number 07CR2364-LAB.

[3] See, e.g., United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006); United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005) (Navarro-Vargas II); United States v. Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004)(Navarro-Vargas I); United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002) (per curiam).

[4] The transcript of the voir dire indicates that grand jurors were shown a video presentation on the role of the grand jury. Mr. Martinez-Hernandez requests that the video presentation be produced. See United States v. Alter, 482 F.2d 1016, 1029 n.21 (9th Cir. 1973) ("[t]he proceedings before the grand jury are secret, but the ground rules by which the grand jury conducts those proceedings are not.").

**1. This Court Instructed Grand Jurors That Their Singular Duty Is to Determine Whether or Not Probable Cause Exists and That They Have No Right to Decline to Indict When the Probable Cause Standard Is Satisfied.**

After repeatedly emphasizing to the grand jurors that probable cause determination was their sole responsibility, see Ex. A at 3, 3-4, 5,[5] this Court instructed the grand jurors that they were forbidden "from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity [as] criminal is not up to you." See id. at 8. The instructions go beyond that, however, and tell the grand jurors that, should "you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient' or 'I'm going to vote in favor of even though the evidence may be insufficient.'" See id. at 8-9. Thus, the instruction flatly bars the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution.

Immediately before limiting the grand jurors' powers in the way just described, this Court referred to an instance in the grand juror selection process in which it excused three potential jurors. See id. at 8.

> I've gone over this with a couple of people. You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.

Id. That "principle" was this Court's discussion of the grand jurors' inability to give effect to their disagreement with Congress. See id. at 8-9. Thus, the Court not only instructed the grand jurors on its view of their discretion; it enforced that view on pain of being excused from service as a grand juror.

Examination of the recently disclosed voir dire transcript, which contains additional instructions and commentary in the form of the give and take between this Court and various prospective grand jurors, reveals how this Court's emphasis of the singular duty is to determine whether or not probable cause exists and his statement that grand jurors they cannot judge the wisdom of the criminal laws enacted by Congress merely compounded an erroneous series of instructions already given to the grand jury venire. In one of his earliest substantive remarks, this Court makes clear that the grand jury's sole function is probable cause determination.

---

[5] See also id. at 20 ("You're all about probable cause.").

> [T]he grand jury is determining really two factors: "do we have a reasonable belief that a crime was committed? And second, do we have a reasonable belief that the person that they propose that we indict committed the crime?"
>
> If the answer is "yes" to both of those, then the case should move forward. If the answer to either of the questions is "no," then the grand jury should not hesitate and not indict.

See Ex. B at 8. In this passage, this Court twice uses the term "should" in a context makes clear that the term is employed to convey instruction: "should" cannot reasonably be read to mean optional when it addresses the obligation not to indict when the grand jury has no "reasonable belief that a crime was committed" or if it has no "reasonable belief that the person that they propose that we indict committed the crime."

Equally revealing is this Court's interactions with two potential grand jurors who indicated that, in some unknown set of circumstances, they might decline to indict even where there was probable cause. Because of the redactions of the grand jurors' names, Mr. Martinez-Hernandez will refer to them by occupation. One is a retired clinical social worker (hereinafter CSW), and the other is a real estate agent (hereinafter REA). The CSW indicated a view that no drugs should be considered illegal and that some drug prosecutions were not an effective use of resources. See id. at 16. The CSW was also troubled by certain unspecified immigration cases. See id.

This Court made no effort to determine what sorts of drug and immigration cases troubled the CSW. He never inquired as to whether the CSW was at all troubled by the sorts of cases actually filed in this district, such as drug smuggling cases and cases involving reentry after deportation and alien smuggling. Rather, this Court provided instructions suggesting that, in any event, any scruples CSW may have possessed were simply not capable of expression in the context of grand jury service.

> Now, the question is can you fairly evaluate [drug cases and immigration cases]? Just as the defendant is ultimately entitled to a fair trial and the person that's accused is entitled to a fair appraisal of the evidence of the case that's in front of you, so, too, is the United States entitled to a fair judgment. If there's probable cause, then the case should go forward. *I wouldn't want you to say*, "well, yeah, there's probable cause, but I still don't like what our government is doing. I disagree with these laws, so I'm not going to vote for it to go forward." If that is your frame of mind, the probably you shouldn't serve. Only you can tell me that.

See id. at 16-17 (emphasis added). Thus, without any sort of context whatsoever, this Court let the grand juror know that it would not want him or her to decline to indict in an individual case where the grand juror

"[didn't] like what our government is doing," see id. at 17, but in which there was probable cause. See id. Such a case "should go forward." See id. Given that blanket proscription on grand juror discretion, made manifest by this Court's use of the pronoun "I", the CSW indicated that it "would be difficult to support a charge even if [the CSW] thought the evidence warranted it." See id. Again, this Court's question provided no context; it inquired regarding "a case," a term presumably just as applicable to possession of a small amount of medical marijuana as kilogram quantities of methamphetamine for distribution. Any grand juror listening to this exchange could only conclude that there was *no* case in which this Court would permit them to vote "no bill" in the face of a showing probable cause.

Just in case there may have been a grand juror that did not understand his or her inability to exercise anything like prosecutorial discretion, this Court drove the point home in his exchange with REA. REA first advised this Court of a concern regarding the "disparity between state and federal law" regarding "medical marijuana." See id. at 24. This Court first sought to address REA's concerns about medical marijuana by stating that grand jurors, like trial jurors, are simply forbidden from taking penalty considerations into account.

> Well, those things -- the consequences of your determination shouldn't concern you in the sense that penalties or punishment, things like that -- we tell trial jurors, of course, that they cannot consider the punishment or the consequence that Congress has set for these things. We'd ask you to also abide by that. We want you to make a business-like decision of whether there was a probable cause. . . .

Id. at 24-25. Having stated that REA was to "abide" by the instruction given to trial jurors, this Court went on to suggest that REA recuse him or herself from medical marijuana cases. See id. at 25.

In response to further questioning, REA disclosed REA's belief "that drugs should be legal." See id. That disclosure prompted this Court to begin a discussion that ultimately led to an instruction that a grand juror is obligated to vote to indict if there is probable cause.

> I can tell you sometimes I don't agree with some of the legal decisions that are indicated that I have to make. But my alternative is to vote for someone different, vote for someone that supports the policies I support and get the law changed. It's not for me to say, "well, I don't like it. So I'm not going to follow it here."
>
> You'd have a similar obligation as a grand juror even though you might have to grit your teeth on some cases. Philosophically, if you were a member of congress, you'd vote against, for example, criminalizing marijuana. I don't know if that's it, but you'd vote against criminalizing some drugs.

1
2
3
> That's not what your prerogative is here. You're prerogative instead is to act like a judge and say, "all right. This is what I've to deal with objectively. Does it seem to me that a crime was committed? Yes. Does it seem to me that this person's involved? It does." *And then your obligation, if you find those to be true, would be to vote in favor of the case going forward.*

4  Id. at 26-27 (emphasis added). Thus, the grand juror's duty is to conduct a simple two part test, which, if

5  both questions are answered in the affirmative, lead to an "obligation" to indict.

6  Having set forth the duty to indict, and being advised that REA was "uncomfortable" with that

7  paradigm, this Court then set about to ensure that there was no chance of a deviation from the obligation

8  to indict in every case in which there was probable cause.

9
10
11
12
> The Court: Do you think you'd be inclined to let people go in drug cases even though you were convinced there was probable cause they committed a drug offense?
> REA: It would depend on the case.
> The Court: Is there a chance that you would do that?
> REA: Yes.
> The Court: I appreciate your answers. I'll excuse you at this time.

13  Id. at 27. Two aspects of this exchange are crucial. First, REA plainly does not intend to act solely on his

14  political belief in decriminalization -- whether he or she would indict "depend[s] on the case," see id., as

15  it should. Because REA's vote "depend[s] on the case," see id., it is necessarily true that REA would vote

16  to indict in some (perhaps many or even nearly all) cases in which there was probable cause. Again, this

17  Court made no effort to explore REA's views; it did not ascertain what sorts of cases would prompt REA

18  to hesitate. The message is clear: it does not matter what type of case might prompt REA's reluctance to

19  indict because, once the two part test is satisfied, the "obligation" is "to vote in favor of the case going

20  forward."[6] See id. at 27. That is why even the "chance," see id., that a grand juror might not vote to indict

21  was too great a risk to run.

22  //

23  //

---

[6] This point is underscored by this Court's explanation to the Grand Jury that a magistrate judge will have determined the existence of probable cause "in most circumstances" before it has been presented with any evidence. See Ex. A at 6. This instruction created an imprimatur of finding probable cause in each case because had a magistrate judge not so found, the case likely would not have been presented to the Grand Jury for indictment at all. The Grand Jury was informed that it merely was redundant to the magistrate court "in most circumstances." See id. This instruction made the grand jury more inclined to indict irrespective of the evidence presented.

**2.    The Instructions Posit a Non-Existent Prosecutorial Duty to Offer Exculpatory Evidence.**

In addition to his instructions on the authority to choose not to indict, this Court also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause. See Ex. A at 20.[7]

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, *the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence*.

Id. (emphasis added).

The antecedent to this instruction is also found in the voir dire. After advising the grand jurors that "the presentation of evidence to the grand jury is necessarily one-sided," see Ex. B at 14, this Court gratuitously added that "[his] experience is that the prosecutors don't play hide-the-ball. If there's

---

[7] These instructions were provided in the midst of several comments that praised the United States attorney's office and prosecutors in general. This Court advised the grand jurors that they "can expect that the U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you." See Ex. A at 27. The instructions delivered during voir dire go even further. In addressing a prospective grand juror who revealed "a strong bias for the U.S. Attorney, whatever cases they might bring," see Ex. B at 38, this Court affirmatively endorsed the prospective juror's view of the U.S. Attorney's office, even while purporting to discourage it: "frankly, I agree with the things you are saying. They make sense to me." See id. at 43. See also id. at 40 ("You were saying that you give a presumption of good faith to the U.S. Attorney and assume, quite logically, that they're not about the business of trying to indict innocent people or people that they believe to be innocent or the evidence doesn't substantiate the charges against.").

This Court's discussion of his once having been a prosecutor before the Grand Jury compounded the error inherent in his praising of the government attorneys. See Ex. A at 9-10. This Court's instructions implied that as a prior prosecutor and current "jury liaison judge," see id. at 8, this Court would not allow the government attorneys to act inappropriately or to present cases for indictment where no probable cause existed.

In addition, while this Court instructed the Grand Jury that it had the power to question witnesses, this Court's instructions also told the Grand Jury that it should "be deferential to the U.S. Attorney if there is an instance where the U.S. Attorney thinks a question ought not to be asked." See Ex. A at 12. As the dissent in Navarro-Vargas pointed out, "the grand jury's independence is diluted by [such an] instruction, which encourages deference to prosecutors." Navarro-Vargas, 408 F.3d at 1215. The judge's admonition that his statement was only "advice," see Ex A at 12, does not cure the error as courts regularly presume grand jurors follow instructions provided to them by the court. See id. at 1202, n.23 ("We must presume that grand jurors will follow instructions because, in fact, we are prohibited from examining jurors to verify whether they understood the instruction as given and then followed it.").

1  something adverse or that cuts against the charge, you'll be informed of that. They have a duty to do that."

2  See id. Thus, this Court unequivocally advised the grand jurors that the government would present any

3  evidence that was "adverse" or "that cuts against the charge." See id.

4  **B.    Navarro-Vargas Establishes Limits on the Ability of Judges to Constrain the Powers
        of the Grand Jury, Which This Court Far Exceeded in His Instructions as a Whole
5          During Impanelment.**

6  The Ninth Circuit has, over vigorous dissents, rejected challenges to various instructions given to

7  grand jurors in the Southern District of California. See Navarro-Vargas II, 408 F.3d 1184. While the Ninth

8  Circuit has thus far (narrowly) rejected such challenges, it has, in the course of adopting a highly formalistic

9  approach[8] to the problems posed by the instructions, endorsed many of the substantive arguments raised by

10  the defendants in those cases. The district court's instructions cannot be reconciled with the role of the

11  grand jury as set forth in Navarro-Vargas II. Taken together, the voir dire of and instructions given to the

12  January 2007 Grand Jury, go far beyond those at issue in Navarro-Vargas, taking a giant leap in the

13  direction of a bureaucratic, deferential grand jury, focused solely upon probable cause determinations and

14  utterly unable to exercise any quasi-prosecutorial discretion. That is not the institution the Framers

15  envisioned. See United States v. Williams, 504 U.S. 36, 49 (1992).

16  For instance, with respect to the grand jury's relationship with the prosecution, the Navarro-Vargas

17  II majority acknowledges that the two institutions perform similar functions: "'the public prosecutor, in

18  deciding whether a particular prosecution shall be instituted or followed up, performs much the same

19  function as a grand jury.'" Navarro-Vargas II, 408 F.3d at 1200 (quoting Butz v. Economou, 438 U.S. 478,

20  510 (1978)). Accord United States v. Navarro-Vargas, 367 F.3d 896, 900 (9th Cir. 2004) (Navarro-Vargas

21  I)(Kozinski, J., dissenting) (The grand jury's discretion in this regard "is most accurately described as

22  prosecutorial." ). See also Navarro-Vargas II, 408 F.3d at 1213 (Hawkins, J., dissenting). It recognizes that

23  the prosecutor is not obligated to proceed on any indictment or presentment returned by a grand jury, id.,

24  but also that "the grand jury has no obligation to prepare a presentment or to return an indictment drafted

---

[8] See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (criticizing the majority because "[t]he instruction's use of the word 'should' is most likely to be understood as imposing an inflexible 'duty or obligation' on grand jurors, and thus to circumscribe the grand jury's constitutional independence.").

by the prosecutor." Id. See Niki Kuckes, The Democratic Prosecutor: Explaining the Constitutional Function of the Federal Grand Jury, 94 Geo. L.J. 1265, 1302 (2006) (the grand jury's discretion not to indict was "'arguably . . . the most important attribute of grand jury review from the perspective of those who insisted that a grand jury clause be included in the Bill of Rights'") (quoting Wayne LaFave et al., Criminal Procedure § 15.2(g) (2d ed. 1999)).

Indeed, the Navarro-Vargas II majority agrees that the grand jury possesses all the attributes set forth in Vasquez v. Hillery, 474 U.S. 254 (1986). See id.

> The grand jury thus determines not only whether probable cause exists, but also whether to "charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a non-capital offense -- all on the basis of the same facts. And, significantly, the grand jury may refuse to return an indictment even "'where a conviction can be obtained.'"

Id. (quoting Vasquez, 474 U.S. at 263). The Supreme Court has itself reaffirmed Vasquez's description of the grand jury's attributes in Campbell v. Louisiana, 523 U.S. 392 (1998), noting that the grand jury "controls not only the initial decision to indict, but also significant questions such as how many counts to charge and whether to charge a greater or lesser offense, including the important decision whether to charge a capital crime." Id. at 399 (citing Vasquez, 474 U.S. at 263). Judge Hawkins notes that the Navarro-Vargas II majority accepts the major premise of Vasquez: "the majority agrees that a grand jury has the power to refuse to indict someone even when the prosecutor has established probable cause that this individual has committed a crime." See id. at 1214 (Hawkins, J. dissenting). Accord Navarro-Vargas I, 367 F.3d at 899 (Kozinski, J., dissenting); United States v. Marcucci, 299 F.3d 1156, 1166-73 (9th Cir. 2002) (per curiam) (Hawkins, J., dissenting). In short, the grand jurors' prerogative not to indict enjoys strong support in the Ninth Circuit. But not in this Court's instructions.

**C. This Court's Instructions Forbid the Exercise of Grand Jury Discretion Established in Both *Vasquez* and *Navarro-Vargas II*.**

The Navarro-Vargas II majority found that the instruction in that case "leave[s] room for the grand jury to dismiss even if it finds probable cause," 408 F.3d at 1205, adopting the analysis in its previous decision in Marcucci. Marcucci reasoned that the instructions do not mandate that grand jurors indict upon every finding of probable cause because the term "should" may mean "what is probable or expected." 299 F.3d at 1164 (citation omitted). That reading of the term "should" makes no sense in context, as Judge

Hawkins ably pointed out. See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) ("The instruction's use of the word 'should' is most likely to be understood as imposing an inflexible 'duty or obligation' on grand jurors, and thus to circumscribe the grand jury's constitutional independence."). See also id. ("The 'word' should is used to express a duty [or] obligation.") (quoting The Oxford American Diction and Language Guide 1579 (1999) (brackets in original)).

The debate about what the word "should" means is irrelevant here; the instructions here make no such fine distinction. The grand jury instructions make it painfully clear that grand jurors simply may not choose not to indict in the event of what appears to them to be an unfair application of the law: should "you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient'...." See Ex. A at 8-9. Thus, the instruction flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution. No grand juror would read this language as instructing, or even allowing, him or her to assess "the need to indict." Vasquez, 474 U.S. at 264.

While this Court used the word "should" instead of "shall" during voir dire with respect to whether an indictment was required if probable cause existed, see Ex. B at 4, 8, in context, it is clear that this Court could only mean "should" in the obligatory sense. For example, when addressing a prospective juror, this Court not only told the jurors that they "should" indict if there is probable cause, it told them that if there is not probable cause, "then the grand jury should hesitate and not indict." See id. at 8. At least in context, it would strain credulity to suggest that this Court was using "should" for the purpose of "leaving room for the grand jury to [indict] even if it finds [no] probable cause." See Navarro-Vargas, 408 F.3d at 1205. Clearly this Court was not.

The full passage cited above effectively eliminates any possibility that this Court intended the Navarro-Vargas spin on the word "should."

> [T]he grand jury is determining really two factors: "do we have a reasonable belief that a crime was committed? And second, do we have a reasonable belief that the person that they propose that we indict committed the crime?"
>
> If the answer is "yes" to both of those, then the case should move forward. If the answer to either of the questions is "no," then the grand jury should not hesitate and not indict.

See Ex. B at 8. Of the two sentences containing the word "should," the latter of the two essentially states that if there is no probable cause, you *should* not indict. This Court could not possibly have intended to "leav[e] room for the grand jury to [indict] even if it finds [no] probable cause." See Navarro-Vargas, 408 F.3d at 1205 (citing Marcucci, 299 F.3d at 1159). That would contravene the grand jury's historic role of protecting the innocent. See, e.g., United States v. Calandra, 414 U.S. 338, 343 (1974) (The grand jury's "responsibilities continue to include both the determination whether there is probable cause and the protection of citizens against unfounded criminal prosecutions.") (citation omitted).

By the same token, if this Court said that "the case should move forward" if there is probable cause, but intended to "leav[e] room for the grand jury to dismiss even if it finds probable cause," see Navarro-Vargas, 408 F.3d at 1205 (citing Marcucci, 299 F.3d at 1159), then this Court would have to have intended two different meanings of the word "should" in the space of two consecutive sentences. That could not have been his intent. But even if it were, no grand jury could ever have had that understanding.[9] Jurors are not presumed to be capable of sorting through internally contradictory instructions. See generally United States v. Lewis, 67 F.3d 225, 234 (9th Cir. 1995) ("where two instructions conflict, a reviewing court cannot presume that the jury followed the correct one") (citation, internal quotations and brackets omitted).

Lest there be any room for ambiguity, on no less than four occasions, this Court made it explicitly clear to the grand jurors that "should" was not merely suggestive, but obligatory:

**(1)** The first occasion occurred in the following exchange when this Court conducted voir dire and excused a potential juror (CSW):

> The Court: . . . If there's probable cause, then the case should go forward. I wouldn't want you to say, "Well, yeah, there's probable cause. But I still don't like what the government is doing. I disagree with these laws, so I'm not going to vote for it to go forward." If that's your frame of mind, then probably you shouldn't serve. Only you can tell me that.
> Prospective Juror: Well, I think I may fall in that category.
> The Court: In the latter category?
> Prospective Juror: Yes.
> The Court: Where it would be difficult for you to support a charge even if you thought the evidence warranted it?
> Prospective Juror: Yes.

---

[9]This argument does not turn on Mr. Martinez-Hernandez' view that the Navarro-Vargas/Marcucci reading of the word "should" in the model instructions is wildly implausible. Rather, it turns on the context in which the word is employed by this Court in his unique instructions, context which eliminates the Navarro-Vargas/Marcucci reading as a possibility.

The Court: I'm going to excuse you then.

See Ex. B at 17. There was nothing ambiguous about the word "should" in this exchange with a prospective juror. Even if the prospective juror did not like what the government was doing in a particular case, that case "should go forward" and this Court expressly disapproved of any vote that might prevent that. See id. ("I wouldn't want you [to vote against such a case]"). The sanction for the possibility of independent judgment was dismissal, a result that provided full deterrence of that juror's discretion and secondary deterrence as to the exercise of discretion by any other prospective grand juror.

**(2)** In an even more explicit example of what "should" meant, this Court makes clear that it there is an unbending obligation to indict if there is probable cause. Grand jurors have no other prerogative.

Court . . . It's not for me to say, "Well, I don't like it. So I'm not going to follow it here."

You'd have a similar *obligation* as a grand juror even though you might have to grit your teeth on some cases. Philosophically, if you were a member of Congress, you'd vote against, for example, criminalizing marijuana. I don't know if that's it, but you'd vote against criminalizing some drugs.

That's not what your *prerogative* is here. Your prerogative instead is act like a judge and to say, "All right. This is what I've got to deal with objectively. Does it seem to me that a crime was committed? Yes. Does it seem to me that this person's involved? It does." *And then your obligation, if you find those things to be true, would be to vote in favor of the case going forward*.

Id. at 26-27 (emphasis added). After telling this potential juror (REA) what his obligations and prerogatives were, the Court inquired as to whether "you'd be inclined to let people go on drug cases even though you were convinced there was probable cause they committed a drug offense?" Id. at 27. The potential juror responded: "It would depend on the case." Id. Nevertheless, that juror was excused. Id. at 28. Again, in this context, and contrary to the situation in Navarro-Vargas, "should" means "shall"; it is obligatory, and the juror has no prerogative to do anything other than indict if there is probable cause.

Moreover, as this example demonstrates, the issue is not limited to whether the grand jury believes a particular law to be "unwise." This juror said that any decision to indict would not depend on the law, but rather it would "depend on the case." Thus, it is clear that this Court's point was that if a juror could not indict on probable cause for *every* case, then that juror was not fit for service. It is equally clear that the prospective juror did not dispute the "wisdom of the law;" he was prepared to indict under some factual

scenarios, perhaps many. But this Court did not pursue the question of what factual scenarios troubled the prospective jurors, because his message is that there is no discretion not to indict.

**(3)** As if the preceding examples were not enough, this Court continued to pound the point home that "should" meant "shall" when it told another grand juror during voir dire: "[W]hat I have to insist on is that you follow the law that's given to us by the United States Congress. We enforce the federal laws here." See id. at 61.

**(4)** And then again, after swearing in all the grand jurors who had already agreed to indict in every case where there was probable cause, this Court reiterated that "should" means "shall" when it reminded them that "your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient . . . . Instead your *obligation* is . . . not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting." See Ex. A at 9.

Moreover, this Court advised the grand jurors that the were forbidden from considering the penalties to which indicted persons may be subject.

> Prospective Juror (REA): ... And as far as being fair, it kind of depends on what the case is about because there is a disparity between state and federal law.
> The Court: In what regard?
> Prospective Juror: Specifically, medical marijuana.
> The Court: Well, those things -- the consequences of your determination shouldn't concern you in the sense that penalties or punishment, things like that -- *we tell trial jurors, of course, that they cannot consider the punishment or the consequence that Congress has set for these things. We'd ask you to also abide by that.* We want you to make a business-like decision of whether there was a probable cause. ...

See Ex. B at 24-25 (emphasis added). A "business-like decision of whether there was a probable cause" would obviously leave no role for the consideration of penalty information.

The Ninth Circuit previously rejected a claim based upon the proscription against consideration of penalty information based upon the same unlikely reading of the word "should" employed in Marcucci. See United States v. Cortez-Rivera, 454 F.3d 1038, 1040-41 (9th Cir. 2006). Cortez-Rivera is inapposite for two reasons. First, this Court did not use the term "should" in the passage quoted above. Second, that context, as well as his consistent use of a mandatory meaning in employing the term, eliminate the ambiguity (if there ever was any) relied upon by Cortez-Rivera. The instructions again violate Vasquez, which plainly authorized consideration of penalty information. See 474 U.S. at 263.

Noting can mask the undeniable fact that this Court explicitly instructed the jurors time and time again that they had a duty, an obligation, and a singular prerogative to indict each and every case where there was probable cause. These instructions go far beyond the holding of Navarro-Vargas and stand in direct contradiction of the Supreme Court's decision in Vasquez. Indeed, it defies credulity to suggest that a grand juror hearing these instructions, and that voir dire, could possibly believe what the Supreme Court held in Vasquez:

> The grand jury does not determine only that probable cause exists to believe that a defendant committed a crime, or that it does not. In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a non-capital offense – all on the basis of the same facts. Moreover, "[t]he grand jury is not bound to indict in every case where a conviction can be obtained."

474 U.S. at 263 (quoting United States v. Ciambrone, 601 F.2d 616, 629 (2nd Cir. 1979) (Friendly, J., dissenting)); accord Campbell v. Louisiana, 523 U.S. 392, 399 (1998) (The grand jury "controls not only the initial decision to indict, but also significant decisions such as how many counts to charge and whether to charge a greater or lesser offense, including the important decision whether to charge a capital crime."). Nor would the January 2007 grand jury ever believe that it was empowered to assess the "the need to indict." See id. at 264. This Court's grand jury is not Vasquez's grand jury. The instructions therefore represent structural constitutional error "that interferes with the grand jury's independence and the integrity of the grand jury proceeding." See United States v. Isgro, 974 F.2d 1091, 1094 (9th Cir. 1992). The indictment must therefore be dismissed. Id.

The Navarro-Vargas II majority's faith in the structure of the grand jury *is not* a cure for the instructions excesses. The Navarro-Vargas II majority attributes "[t]he grand jury's discretion -- its independence -- [to] the absolute secrecy of its deliberations and vote and the unreviewability of its decisions." 408 F.3d at 1200. As a result, the majority discounts the effect that a judge's instructions may have on a grand jury because "it is the *structure* of the grand jury process and its *function* that make it independent." Id. at 1202 (emphases in the original).

Judge Hawkins sharply criticized this approach. The majority, he explains, "believes that the 'structure' and 'function' of the grand jury -- particularly the secrecy of the proceedings and unreviewability of many of its decisions -- sufficiently protects that power." See id. at 1214 (Hawkins, J., dissenting). The

flaw in the majority's analysis is that "[i]nstructing a grand jury that it lacks power to do anything beyond making a probable cause determination ... unconstitutionally undermines the very structural protections that the majority believes save[] the instruction." Id. After all, it is an "'almost invariable assumption of the law that jurors follow their instructions.'" Id. (quoting Richardson v. Marsh, 481 U.S. 200, 206 (1987)). If that "invariable assumption" were to hold true, then the grand jurors could not possibly fulfill the role described in Vasquez. Indeed, "there is something supremely cynical about saying that it is fine to give jurors erroneous instructions because nothing will happen if they disobey them." Id.

In setting forth Judge Hawkins' views, Mr. Martinez-Hernandez understands that this Court may not adopt them solely because the reasoning that supports them is so much more persuasive than the majority's sophistry. Rather, he sets them forth to urge the Court *not to extend* what is already untenable reasoning.

Here, again, the question is not an obscure interpretation of the word "should", especially in light of the instructions and commentary by this Court during voir dire discussed above - unaccounted for by the Court in Navarro-Vargas II because they had not yet been disclosed to the defense, but an absolute ban on the right to refuse to indict that directly conflicts with the recognition of that right in Vasquez, Campbell, and both Navarro-Vargas II opinions. Navarro-Vargas II is distinguishable on that basis, but not only that.

This Court did not limit itself to denying the grand jurors the power that Vasquez plainly states they enjoy. He also excused prospective grand jurors who might have exercised that Fifth Amendment prerogative, excusing "three [jurors] in this case, because they could not adhere to [that] principle...." See Ex. A at 8; Ex. B at 17, 28. The structure of the grand jury and the secrecy of its deliberations cannot embolden grand jurors who are no longer there, likely because they expressed their willingness to act as the conscience of the community. See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (a grand jury exercising its powers under Vasquez "serves ... to protect the accused from the other branches of government by acting as the 'conscience of the community.'") (quoting Gaither v. United States, 413 F.2d 1061, 1066 & n.6 (D.C. Cir. 1969)). The federal courts possess only "very limited" power "to fashion, on their own initiative, rules of grand jury procedure," United States v. Williams, 504 U.S. 36, 50 (1992), and, here, this Court has both fashioned his own rules and enforced them.

//

//

**D.   The Instructions Conflict with <u>Williams'</u> Holding That There Is No Duty to Present Exculpatory Evidence to the Grand Jury.**

In <u>Williams</u>, the defendant, although conceding that it was not required by the Fifth Amendment, argued that the federal courts should exercise their supervisory power to order prosecutors to disclose exculpatory evidence to grand jurors, or, perhaps, to find such disclosure required by Fifth Amendment common law. <u>See</u> 504 U.S. at 45, 51. <u>Williams</u> held that "as a general matter at least, no such 'supervisory' judicial authority exists." <u>See</u> <u>id.</u> at 47. Indeed, although the supervisory power may provide the authority "to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions,'" <u>id.</u> at 46 (citation omitted), it does not serve as "a means of *prescribing* such standards of prosecutorial conduct in the first instance." <u>Id.</u> at 47 (emphasis added). The federal courts possess only "very limited" power "to fashion, on their own initiative, rules of grand jury procedure." <u>Id.</u> at 50. As a consequence, <u>Williams</u> rejected the defendant's claim, both as an exercise of supervisory power and as Fifth Amendment common law. <u>See</u> <u>id.</u> at 51-55.

Despite the holding in <u>Williams</u>, the instructions here assure the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause. <u>See</u> Ex. A at 20.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, *the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence*.

<u>Id.</u> (emphasis added). Moreover, the district court later returned to the notion of the prosecutors and their duties, advising the grand jurors that they "can expect that the U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you." <u>See</u> <u>id.</u> at 27. The Ninth Circuit has already concluded it is likely this final comment is "unnecessary." <u>See</u> <u>Navarro-Vargas</u>, 408 F.3d at 1207.

This particular instruction has a devastating effect on the grand jury's protective powers, particularly if it is not true. It begins by emphasizing the message that <u>Navarro-Vargas II</u> somehow concluded was not

conveyed by the previous instruction: "You're all about probable cause." See Ex. A at 20. Thus, once again, the grand jury is reminded that they are limited to probable cause determinations (a reminder that was probably unnecessary in light of the fact that this Court had already told the grand jurors that they likely would be excused if they rejected this limitation). The instruction goes on to tell the grand jurors that they should consider evidence that undercuts probable cause, but also advises the grand jurors that the prosecutor will present it. The end result, then, is that grand jurors should consider evidence that goes against probable cause, but, if none is presented by the government, they can presume that there is none. After all, "in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence." See id. Moreover, during voir dire, this Court informed the jurors that "my experience is that the prosecutors don't play hide-the-ball. If there's something adverse or that cuts against the charge, you'll be informed of that. *They have a duty to do that*." See Ex. B at 14-15 (emphasis added). Thus, if the exculpatory evidence existed, it necessarily would have been presented by the "duty-bound" prosecutor, because the grand jurors "can expect that the U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you." See Ex. A at 27.

These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:

(1) I have to consider evidence that undercuts probable cause.

(2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.

(3) Because no such evidence was presented to me, I may conclude that there is none.

Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

The instructions, therefore, discourage investigation -- if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time -- and provide additional support to every probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side

of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

## VI.

## CONCLUSION

For the foregoing reasons, Mr. Martinez-Hernandez respectfully requests that the Court grant the above motions.

                                              Respectfully submitted,

Dated: December 11, 2007                */s/ Linda Lopez*
                                              **LINDA LOPEZ**
                                              Federal Defenders of San Diego, Inc.
                                              Attorneys for Mr. Martinez-Hernandez
                                              Linda_Lopez@fd.org

## CERTIFICATE OF SERVICE

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of her information and belief, and that a copy of the foregoing document has been served this day upon:

**Arnold Dale Blankenship**
Dale.Blankenship@usdoj.gov,Jacquelyn.Mason2@usdoj.gov,efile.dkt.gc1@usdoj.gov

Dated: December 11, 2007         　　　　　　　　/s/ Linda Lopez
                                                **LINDA LOPEZ**
                                                Federal Defenders of San Diego, Inc.
                                                225 Broadway, Suite 900
                                                San Diego, CA 92101-5030
                                                (619) 234-8467  (tel)
                                                (619) 687-2666  (fax)
                                                e-mail: Linda_Lopez@fd.org