KAREN P. HEWITT
United States Attorney
A. DALE BLANKENSHIP
Assistant U.S. Attorney
California State Bar No. 235960
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6199
Email Dale.Blankenship@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>  Plaintiff, <br><br> v. <br><br> JULIO MARTINEZ-HERNANDEZ, <br><br>  Defendant. | Criminal Case No. 07CR3101-LAB <br><br> HEARING DATE: January 14, 2007 <br> TIME: 2:00 p.m. <br><br> UNITED STATES' MOTIONS <u>IN LIMINE</u> TO: <br> (A) EXCLUDE ALL WITNESSES EXCEPT CASE AGENT; <br> (B) EXCLUDE EVIDENCE WHY DEFENDANT RE-ENTERED UNITED STATES; <br> (C) EXCLUDE EVIDENCE REGARDING PRIOR RESIDENCY; <br> (D) ADMIT A-FILE DOCUMENTS; <br> (E) ADMIT EXPERT TESTIMONY; <br> (F) PROHIBIT REFERENCE TO PUNISHMENT. ETC.; <br> (G) PRECLUDE ARGUMENT REGARDING WARNING; <br> (H) PROHIBIT ARGUMENT REGARDING DURESS AND NECESSITY; <br> (I) PROHIBIT REFERENCE TO DOCUMENT DESTRUCTION; <br> (J) ADMIT 404(b) AND 609 EVIDENCE; <br> (K) PROHIBIT COLLATERAL ATTACK OF THE DEPORTATION; <br> (L) ADMIT DEPORTATION TAPE OR TRANSCRIPT; <br> (M) PROHIBIT SELF-SERVING HEARSAY; <br> (N) ADMIT STATEMENTS. <br><br> TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES. |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, A. Dale Blankenship, Assistant U.S. Attorney, and hereby files its Motions In Limine in the above-referenced case. Said motions are based upon the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

**I**

**STATEMENT OF THE CASE**

On November 14, 2007, a federal grand jury in the Southern District of California returned a one-count Indictment charging Defendant with attempted entry after deportation, in violation of Title 8, United States Code, Section 1326. Defendant was arraigned on the Indictment on November 15, 2007, and entered a not guilty plea.

On December 11, 2007, Defendant filed the following motions: dismiss the indictment due to improper grand jury instructions; compel discovery; preserve evidence; suppress statements; and leave to file further motions. On December 13, 2007, the Government filed motions for reciprocal discovery and fingerprint exemplars. On December 13, 2007, the Government also filed responses to Defendant's motions.

On December 17, 2007, the Court heard argument on the motions. The Court granted Government's motions for reciprocal discovery and fingerprint exemplars. The Court denied Defendant's discovery motion as moot and denied the remaining motions. The Court set a motions in limine of January 14, 2008, at 2:00 p.m. and a trial date of January 15, 2008. The Court also granted Defendant's request for a competency evaluation.

**II**

**STATEMENT OF FACTS**

**A.   INSTANT OFFENSE**

On October 15, 2007, at approximately 5:20 a.m., a remote video surveillance system ("RVSS") operator observed four individuals climbing over the international border fence in an area known as the "Elbow." This area is approximately 1.5 miles west of the San Ysidro, California, Port of Entry. The "Elbow" is often used by illegal aliens attempting to avoid detection by U.S. Border Patrol ("USBP")

Agents while they further their entry into the United States. The RVSS operator reported this observation to USBP Agent Alan Lambert, who, in turn, relayed the information to USBP Agent Lee Miller. Agent Lambert arrived first to the area and apprehended two individuals. Agent Miller arrived next, and he was informed by Agent Lambert that another individual fled north from his location.

Agent Miller began searching the area on his all terrain vehicle. Agent Miller observed an individual running away from the "Elbow" along the secondary border fence, who then ducked into the brush in an attempt to hide. Agent Miller dismounted his all terrain vehicle and the individual, later identified as Defendant, Julio Martinez-Hernandez, got up and began to run. Agent Miller identified himself as a USBP Agent and ordered him to stop. Defendant did not stop, but instead kept running. Agent Miller quickly caught up to Defendant and ordered him to stop. Defendant ignored this command also and kept running in an erratic manner, zig-zagging near Agent Miller's all terrain vehicle. Defendant eventually ran into Agent Miller's left front tire and stopped running.

Agent Miller conducted an immigration inspection. Defendant identified himself as "Jose Perez-Ruiz". Defendant admitted to being a citizen of Mexico, without documents permitting him to enter the United States. Defendant complained that he had pain in his lower right leg. Agent Miller asked if he wanted medical attention and Defendant stated that if Agent Miller would let him go back to Mexico, right now, he would not need medical attention. Agent Miller replied that he could not go back to Mexico, right now, and Defendant then declined medical attention.

Defendant was arrested and transported to the Imperial Beach Border Patrol Station for processing. A records search revealed that Defendant's name was not "Jose Perez-Ruiz". Defendant was asked his name again and he replied that he had given a false name in the field and that his name was actually Julio Martinez-Hernandez. The records check also revealed that Defendant was previously deported by an immigration judge and that he had a criminal history.

At approximately 9:05 a.m., USBP Agent Fernando Estrada-Flores advised Defendant of his Miranda rights in the Spanish language and Defendant invoked.

### B.    DEFENDANT'S CRIMINAL HISTORY

On July 24, 1989, Defendant was convicted of taking a vehicle without the owner's consent in violation of Cal. Vehicle Code § 10851(a), and he was sentenced to 270 days jail and 3 years probation.

On June 13, 1990, Defendant was convicted of burglary of a locked vehicle in violation of Cal. Penal Code § 459 and he was sentenced to 2 years prison. On January 21, 1992, Defendant was convicted in the Southern District of California of illegal entry in violation of 8 U.S.C. § 1325 and he was sentenced to 150 days' custody. On April 18, 1993, Defendant was convicted in the Southern District of California of illegal entry in violation of 8 U.S.C. § 1325 and he was sentenced to 100 days' custody. On September 17, 1993, Defendant was convicted in the Southern District of California of illegal entry in violation of 8 U.S.C. § 1325 and he was sentenced to 160 days' custody. On April 4, 1995, Defendant was convicted of burglary of a locked vehicle in violation of Cal. Penal Code § 459, and he was sentenced to 16 months' prison. On April 4, 1995, Defendant was convicted, in an unrelated case, of two counts of burglary of a locked vehicle in violation of Cal. Penal Code § 459, and he was sentenced to 4 years' prison. On July 31, 2000, Defendant was convicted in the Southern District of California of illegal entry in violation of 8 U.S.C. § 1325, and he was sentenced to 30 months' custody. On October 11, 2002, Defendant was convicted in the Southern District of California of illegal entry in violation of 8 U.S.C. § 1325, and he was sentenced to 24 months' custody and 1 year supervised release.

### C. DEFENDANT'S IMMIGRATION HISTORY

Defendant has been removed from the United States on at least 12 occasions. Defendant has also had numerous immigration hearings. Defendant was most recently removed, pursuant to the reinstatement of an immigration judge's order, on November 25, 2006.

## III

## MOTIONS IN LIMINE

### A. THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF THE GOVERNMENT'S CASE AGENT

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been critical in moving the investigation forward to this point and is considered by the United States to be an integral part of the trial team. The United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

### B. THE COURT SHOULD PROHIBIT REFERENCE TO WHY THE DEFENDANT REENTERED THE UNITED STATES

Defendant may attempt to offer evidence of the reason for his reentry, or alternatively, his belief that he was entitled to do so. Defendant may also attempt to offer evidence of the reason for his being in the United States, or alternatively, his belief that he was entitled to be here. The Court should preclude him from doing so. Evidence of <u>why</u> Defendant violated Section 1326 is patently irrelevant to the question of <u>whether</u> he did so -- the only material issue in this case. Rule 401 defines "relevant evidence" as:

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. Evid. 401.

Rule 402 states that evidence "which is not relevant is not admissible." Fed. R. Evid. 402. Here, the reason why Defendant reentered the United States, and his belief that he was justified in doing so, is irrelevant to whether he violated Section 1326. Likewise, the reason why Defendant was in the United States, and his belief that he was justified in being here, is irrelevant.

The case of <u>United States v. Komisaruk</u>, 885 F.2d 490 (9th Cir. 1980), is illustrative. There, Komisaruk was convicted of willfully damaging government property by vandalizing an Air Force computer. <u>Id.</u> at 491. On appeal, she argued that the district court erred in granting the government's motions <u>in limine</u> to preclude her from introducing her "political, religious, or moral beliefs" at trial. <u>Id.</u> at 492. In particular, she argued that she was entitled to introduce evidence of her anti-nuclear war views, her belief that the Air Force computer was illegal under international law, and that she was otherwise morally and legally justified in her actions. <u>Id.</u> at 492-93. The district court held that her "personal disagreement with national defense policies could not be used to establish a legal justification for violating federal law nor as a negative defense to the government's proof of the elements of the charged crime," and the Ninth Circuit affirmed. <u>Id.</u> at 492. Similarly here, the reason why Defendant reentered the United States and his belief that he was entitled to do so, and the reason why he was in the United States and his belief that he was entitled to be here, are irrelevant to any fact at issue in this case.

**C.   THE COURT SHOULD PROHIBIT REFERENCE TO PRIOR RESIDENCY**

If Defendant seeks to introduce evidence at trial of his former residence in the United States, legal or illegal, the Court should preclude him from doing so. Such evidence is not only prejudicial, but

irrelevant and contrary to Congressional intent.

In <u>United States v. Ibarra</u>, 3 F.3d 1333, 1334 (9th Cir. 1993), the district court granted the United States' motion <u>in limine</u> to preclude Ibarra from introducing "evidence of his prior legal status in the United States, and the citizenship of his wife, mother and children" in a Section 1326 prosecution. <u>Id.</u>, <u>overruled on limited and unrelated grounds by</u> <u>United States v. Alvarado-Delgado</u>, 98 F.3d 492, 493 (9th Cir. 1996). He appealed, and the Ninth Circuit affirmed, reasoning that, because Ibarra had failed to demonstrate how the evidence could possibly affect the issue of his alienage, the district court properly excluded it as irrelevant. <u>Id.</u>

Similarly, in <u>United States v. Serna-Vargas</u>, 917 F. Supp. 711 (C.D. Cal. 1996), the Defendant filed a motion <u>in limine</u> to introduce evidence of what she termed "de facto" citizenship as an affirmative defense in a Section 1326 prosecution. <u>Id.</u> at 711. Specifically, she sought to introduce evidence of:

(1) involuntariness of initial residence;

(2) continuous residency since childhood;

(3) fluency in the English language; and

(4) legal residence of immediate family members.

<u>Id.</u> at 712. The court denied the motion, noting that "none of these elements are relevant to the elements that are required for conviction under § 1326." <u>Id.</u> at 712. The court also noted that admission of the evidence would run "contrary to the intent of Congress." <u>Id.</u> In particular, the court stated that, under Section 212 of the Immigration and Naturalization Act of 1952 (codified at 8 U.S.C. § 1182(c)), the Attorney General may exercise his discretion not to deport an otherwise deportable alien, if the alien has lived in the United States for 7 years. <u>Id.</u> at 712-13. The factors which the Defendant relied upon to establish her "de facto" citizenship, the court noted, are "among the factors the Attorney General considers in deciding whether to exercise this discretion." <u>Id.</u> at 713.

Thus, the court reasoned, "the factors that [the Defendant] now seeks to present to the jury are ones that she could have presented the first time she was deported." <u>Id.</u> Therefore, the court held, "[a]llowing her to present the defense now would run contrary to Congress' intent." <u>Id.</u> In particular, "under the scheme envisioned by Congress, *an alien facing deportation may present evidence of positive*

*equities only to administrative and Article III judges, and not to juries.*" Id. (emphasis added).

## D. THE COURT SHOULD ADMIT A-FILE DOCUMENTS

The Government intends to offer documents from the Alien Registration File, or "A-file," that correspond to Defendant's name and A-number in order to establish Defendant's alienage and prior deportation as well as the lack of documentation showing that when he attempted to reenter the United States, Defendant had not sought or obtained authorization from the Secretary of the Department of Homeland Security. Specifically, the United States will offer the January 21, 1994, Order to Show Cause; the April 14, 1994, Order of the Immigration Judge; the November 26, 2006, Notice of Intent to Reinstate Prior Order; the November 26, 2006, Reinstatement; the November 26, 2006, Warrant of Deportation; the November 26, 2006 sworn statement; the November 26, 2006, Warning to Alien Deported; and a Certificate of Non-Existence of Record, or CNR.[1]  These documents are self-authenticating "public records," Fed. R. Evid. 803(8)(B), or, alternatively, "business records." Fed. R. Evid. 803(6) and should be admitted.

The Ninth Circuit has addressed the admissibility of A-File documents in United States v. Loyola- Dominguez, 125 F.3d 1315 (9th Cir. 1997). There, Loyola-Dominguez appealed his § 1326 conviction, arguing, among other issues, that the district court erred in admitting at trial certain records from his "A-file." Id. at 1317. The district court had admitted: (1) a warrant of deportation; (2) a prior warrant for the Defendant's arrest; (3) a prior deportation order; and (4) a prior warrant of deportation. The Defendant in Loyola-Dominguez argued that admission of the documents violated the rule against hearsay, and denied him his Sixth Amendment right to confront witnesses. The Ninth Circuit rejected his arguments, holding that the documents were properly admitted as public records. Id. at 1318. The court first noted that documents from a Defendant's immigration file, although "made by law enforcement agents, . . . reflect only 'ministerial, objective observation[s]' and do not implicate the concerns animating the law enforcement exception to the public records exception." Id. (quoting United States v. Hernandez-Rojas, 617 F.2d 533, 534-35 (9th Cir. 1980)). The court also held that such

---

[1] The Certificate of Non-Existence of Records has been ordered by the United States' case agent; at this time the CNR has not been received. The United States will produce the CNR to Defendant as soon as it is received.

1  documents are self-authenticating and, therefore, do not require an independent foundation. Id.

2  The Ninth Circuit has consistently held that documents from a Defendant's immigration file are admissible in a § 1326 prosecution to establish the Defendant's alienage and prior deportation. See United States v. Bahena-Cardenas, 411 F.3d 1067 (9thCir. 2005) (warrant of deport is nontestimonial because it is not made in anticipation of litigation and is a routine, objective cataloging of unambiguous factual matter.); United States v. Mateo-Mendez, 215 F.3d 1039, 1042-45 (9th Cir. 2000) (district court properly admitted certificate of nonexistence); United States v. Contreras, 63 F.3d 852, 857-58 (9th Cir. 1995) (district court properly admitted warrant of deportation, deportation order and deportation hearing transcript); United States v. Hernandez-Rojas, 617 F.2d at 535 (district court properly admitted warrant of deportation as public record); United States v. Dekermenjian, 508 F.2d 812, 814 n.1 (9th Cir. 1974) (district court properly admitted "certain records and memoranda of the Immigration and Naturalization Service" as business records, noting that records would also be admissible as public records).

### 1. The Court Should Admit the CNR

At trial, the United States anticipates introducing a Certificate of Nonexistence of Record, or CNR, stating that there is no record of Defendant's having received consent to reenter the United States. As the Ninth Circuit recently held, the CNR is nontestimonial evidence and may be admitted. United States v. Cervantes-Flores, 421 F.3d 825, 834 (9th Cir. 2005).

### 2. The Court Should Admit the Warrant of Deportation

At trial, the United States will offer Defendant's November 26, 2006, Warrant of Deportation, or I-205, to show that Defendant was physically removed from the United States pursuant to the immigration judge's order and the re-instated order. Similar to the CNR, a warrant of deportation contains a "routine, objective, indeed mechanical recording of an unambiguous factual matter" and is admissible, nontestimonial evidence. United States v. Bahena-Cardenas, 411 F.3d 1067, 1075 (9th Cir. 2005) (citation omitted).

Defendant's Warrant of Deportation will be relevant at trial for several reasons. First, the United States bears the burden of proving beyond a reasonable doubt that Defendant was physically removed from the United States after the order of deportation and before his entry on October 15, 2007. See id. at 1074 (citing United States v. Romo-Romo, 246 F.3d 1272, 1275-76 (9th Cir. 2001)); see also United

States v. McClelland, 941 F.2d 999, 1003 (9th Cir. 1991) ("Clearly, the requirement that the Government prove beyond a reasonable doubt every element of the charged offense is of the most fundamental nature.").

In addition to proving a prior deportation, the Warrant also provides circumstantial evidence of two other elements – alienage and lack of permission to be in the United States. See United States v. Hernandez-Herrera, 273 F.3d 1213 (9th Cir. 2001) ("We have held that deportation documents are admissible to prove alienage under the public records exception to the hearsay rule"). The Warrant shows that Defendant was still subject to deportation, when he was apprehended on October 15, 2007.

### E.   THE COURT SHOULD ADMIT EXPERT TESTIMONY

At trial, the Government intends to offer testimony of its fingerprint analyst to identify the Defendant as the person who was previously deported. Defendant was notified of the United States' intention to use a fingerprint expert in the Government's December 13, 2007, motion requesting fingerprint exemplars, as well as by letter dated December 31, 2007.

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. Determining whether expert testimony would assist the trier-of-fact in understanding the facts at issue is within the sound discretion of the trial judge. United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). An expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. In addition, an expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704.

It is anticipated the Government's fingerprint expert will testify that based upon fingerprint comparisons, Defendant was the same person deported who was ordered deported in 1994; removed on November 26, 2006; and who reentered the United States on October 15, 2007. In addition, the Government's fingerprint expert may testify to establish the foundation for any prior acts or convictions the United States seeks to use at trial. This testimony should be admitted under Rules 702 and 703.

### F.   THE COURT SHOULD PROHIBIT REFERENCE TO DEFENDANT'S HEALTH, AGE, FINANCES, EDUCATION AND POTENTIAL PUNISHMENT

Evidence of, and thus argument referring to, Defendant's health, age, finances, education and potential punishment is inadmissible and improper.

Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible." Rule 403 provides further that even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1 (2000 Edition).[2]

Reference to Defendant's health, age, finances, education and potential punishment may be relevant at sentencing. However, in an illegal entry trial, such reference is not only irrelevant and unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

### G. THE COURT SHOULD PRECLUDE DEFENDANT FROM ARGUING PERMISSION TO REENTER BASED UPON WARNING TO ALIEN DEPORTED

The Court should preclude any argument that Defendant believed he was not required to obtain the permission from the Attorney General or his designated successor the Secretary of the Department of Homeland Security prior to reentry into the United States or that Defendant believed he had permission to enter the United States based on any confusion or alleged error in the execution of the I-294 Warning to an Alien Deported or statements made by the immigration judge at the May 13, 1992 deportation hearing. See United States v. Ramirez-Valencia, 202 F.3d 1106, 1109-10 (9th Cir. 2000) (holding that such a claim is legally insufficient and any such argument improper).

### H. THE COURT SHOULD PRECLUDE ARGUMENT CONCERNING DURESS AND NECESSITY

Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980) (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 522 U.S. 826 (1997) (addressing duress). Similarly, a district court may preclude a necessity defense where "the evidence, as described in the Defendant's offer of proof, is insufficient as a matter of law to support the

---

[2] Additionally, it is inappropriate for a jury to be informed of the consequences of their verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991), cert. denied, 506 U.S. 932 (1992).

proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

In order to rely on a defense of duress, Defendant must establish a prima facie case that:

(1) Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2) Defendant had a well-grounded fear that the threat would be carried out; and

(3) There was no reasonable opportunity to escape the threatened harm.

United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997. If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.

A Defendant must establish the existence of four elements to be entitled to a necessity defense:

(1) that he was faced with a choice of evils and chose the lesser evil;

(2) that he acted to prevent imminent harm;

(3) that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and

(4) that there was no other legal alternative to violating the law.

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195.

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense. The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

**I.  THE COURT SHOULD PROHIBIT EXAMINATION OR REFERENCE TO ALLEGED DOCUMENT DESTRUCTION AND POOR RECORD KEEPING**

The United States seeks to exclude the Defendant from making reference or eliciting testimony regarding (former) Immigration and Naturalization Services' ("INS"), now Department of Homeland Security's record keeping or access to information and records. Specifically, the United States seeks

1  to preclude reference to argument that (1) INS computers are not fully interactive with other federal
2  agencies' computers, (2) over 2 million documents filed by immigrants have been lost or forgotten, (3)
3  other federal agencies have the ability and authority to apply for an immigrant to come into the United
4  States, (4) the custodian of the A-File never checked with other federal agencies to inquire about
5  documents relating to the Defendant.  Such argument is irrelevant based upon the facts of this case as
6  there has been no proffer or mention by the Defendant that he ever made application to seek reentry after
7  deportation.  See United States v. Rodriguez-Rodriguez, 364 F.3d 1142 (9th Cir. 2004) (affirming
8  District Court Judge Lorenz's rulings to deny such testimony in a § 1326 "found in" case with similar
9  facts).

10       The Ninth Circuit Court of Appeals held in Rodriguez-Rodriguez that any such testimony or
11  cross examination seeking to elicit such testimony is properly barred as irrelevant.  Id. at 1146.  The
12  Ninth Circuit explicitly rejected Defense counsel's claim that the District Court's exclusion of the
13  anticipated testimony violates the Confrontation Clause.  Instead, it declared that "none of the that
14  information is relevant on the facts of this case, because it is uncontested that Rodriguez never made
15  any application to the INS or any other federal agency."  Thus, absent at a minimum a proffer that
16  Defendant had in fact applied for or obtained permission to enter or remain in the United States in this
17  instant case, any such line of inquiry on cross examination or on direct testimony is irrelevant and
18  properly excludable.

19       Additionally, the United States seeks to preclude reference to shredding of immigration
20  documents by a (former) INS contractor as set forth in United States v. Randall, et al., Criminal Case
21  No. SA CR 03-26-AHS (C.D. Cal. 2003) unless the Defendant testifies or offers evidence that (1) he
22  did in fact apply for permission to reenter the United States from the Attorney General, or his designated
23  successor, the Secretary of the Department of Homeland Security and (2) that such a document would
24  have been stored at that particular facility where the shredding occurred in the Randall case.   Any
25  reference of document destruction is irrelevant and unfairly prejudicial unless there is some evidence
26  offered by the Defendant at trial that he did in fact seek permission to reenter the United States.  See
27  Fed. R. Evid. 401-403.  Moreover, even if the Defendant offers evidence that he did apply, there must
28  be some showing that his application would have been stored at the facility which is the subject of the

1  Randall case during the time of the alleged shredding of the documents.  Otherwise, it is immaterial
2  and irrelevant whether a contractor of (former) INS destroyed documents at the INS California Service
3  Center in Laguna Niguel, California because the Defendant did not apply, or if he did apply, his
4  application was not stored there, and therefore, could not have been effected.  Such testimony as well
5  as any such statements asserted in Defendant's opening or closing arguments would be unfairly
6  prejudicial to the United States and likely to cause confusion to the jury because such unsupported
7  blanket allegations or references of document destruction or poor record keeping without any showing
8  by the Defendant that he applied for permission to reenter would be misleading.  Accordingly, the
9  United States seeks an order precluding such argument.

10 **J.      THE COURT SHOULD ADMIT 404(B) AND 609 EVIDENCE**

11      Defendant was provided a copy of his rap sheet and many of his conviction records.  The United
12 States intends to introduce his extensive criminal and immigration history as 404(b) and 609 evidence.
13      As evidence of other acts, the United States intends to introduce his 2002 conviction of illegal
14 entry in violation of 8 U.S.C. § 1325, and his immigration history in which he has been apprehended
15 in the United States and then removed or excluded from the United States to Mexico on January 26,
16 2002, and November 25, 2006.
17      These crimes, wrongs, or acts are relevant to Defendant's current case.  Rule 404(b) of the
18 Federal Rules of Evidence precludes the admission of evidence of "other crimes . . . to prove the
19 character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b).  Evidence
20 of other crimes, however, is admissible to prove "motive, opportunity, intent, preparation, plan,
21 knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b).
22      The Ninth Circuit has adopted a four-part test to determine the admissibility of evidence under
23 Rule 404(b). See United States v. Montgomery, 150 F.3d 983, 1000-01 (9th Cir. 1998).  The court
24 should consider the following: (1) the evidence of other crimes must tend to prove a material issue in
25 the case; (2) the other crime must be similar to the offense charged; (3) proof of the other crime must
26 be based on sufficient evidence; and (4) commission of the other crime must not be too remote in time.
27 Id.  In addition to satisfying the four-part test, evidence of other crimes must also satisfy the Rule 403
28 balancing test - its probative value must not be substantially outweighed by the danger of unfair

1  prejudice. See Fed. R. Evid. 403.

2  In United States v. Graham, 575 F.2d 739, 740 (9th Cir. 1978), the defendant was being
3  prosecuted for § 1326 and had previously been convicted of "being illegally in the United States." The
4  district court admitted a probation officer's testimony that the defendant was the same person that had
5  previously been convicted of "being illegally in the United States." Id. The defendant appealed arguing
6  that the probation officer's testimony was not admissible. Id. Holding that "[t]his appeal approaches
7  the frivolous," the Ninth Circuit affirmed. Id.

8  Similarly, in United States v. Bejar-Matrecios, 618 F.2d 81, 83-84 (9th Cir. 1980), the district
9  court admitted the defendant's prior § 1325 conviction in his § 1326 prosecution. The Ninth Circuit
10 held that a prior § 1325 conviction is relevant to a § 1326 prosecution. Id. However, the certified copy
11 of the judgment and commitment order was too prejudicial because it was not introduced with a limiting
12 instruction. Id.

13 Here, the United States will be requesting a limiting instruction. Defendant's prior § 1325
14 conviction and prior apprehensions and removals prove that he intended to enter the United States
15 without permission, absence of mistake or accident and knowledge. The proof of Defendant's
16 apprehensions and removals would be made by witnesses and certified records. Defendant's conviction
17 and removals occurred within 10 years of the date of the offense. Moreover, with a limiting instruction,
18 the probative value is not substantially outweighed by any prejudicial effect.

19 In a letter dated December 31, 2007, the United States notified Defendant of its intent to use his
20 prior convictions for impeachment purposes under Rule 609. Specifically, the United States intends to
21 inquire about Defendant's October 11, 2002, conviction for illegal entry in violation of 8 U.S.C. § 1325,
22 for which he was sentenced to 24 months' custody; and Defendant's April 4, 1995, conviction for
23 burglary in violation of Cal. Penal Code § 459, for which he was sentenced to 16 months' custody,
24 should he testify. The United States will also use Defendant's conviction should Defendant contend that
25 he had permission to enter the United States or that he did not need permission to enter. If Defendant
26 testifies at trial, he will place his credibility squarely at issue, and the United States should be able to
27 inquire in particular about his recent drug conviction.

28 Federal Rule of Evidence 609(a) provides in pertinent part

> For purposes of attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment.

Fed. R. Evid. 609(a). The Ninth Circuit has listed five factors that the district court should balance in making the determination required by Rule 609. United States v. Browne, 829 F.2d 760, 762-63 (9th Cir. 1987). Specifically, the court should consider 1) the impeachment value of the prior crime; 2) the point in time of the conviction and the witness's subsequent history; 3) the similarity between the past crime and the charged crime; 4) the importance of the Defendant's testimony; and 5) the centrality of the Defendant's credibility. Id. at 762-63. See also United States v. Hursh, 217 F.3d 761 (9th Cir. 2000).

Here, Defendant's felony convictions can be used as 609 evidence. Several of the Browne factors weigh in favor of admitting the Defendant's felony convictions to attack his credibility. First, the impeachment value of Defendant's felony convictions, which show his disregard for the law, is high. Both of Defendant's convictions would cast doubt on Defendant's credibility should he testify. Second, Defendant's 2002 conviction for illegal entry is very recent in time. Third, because such a challenge could only be developed through Defendant's own testimony, his credibility in asserting such a challenge would be central to the case. Furthermore, whatever risk of unfair prejudice exists can be adequately addressed by sanitizing his conviction and with a limiting jury instruction.

Accordingly, the Government should be allowed to introduce evidence of Defendant's prior felony convictions under Rule 609(a) if he elects to testify at trial.

**K.   THE COURT SHOULD PROHIBIT COLLATERAL ATTACK OF DEFENDANT'S PRIOR DEPORTATION**

Defendant should not be permitted to argue the lawfulness of his deportation to the jury at trial. See United States v. Alvarado-Delgado, 98 F.3d 492 (9th Cir. 1996) (en banc). The lawfulness of the deportation is not an element of the offense under Section 1326, so this issue should not be presented to or determined by a jury. Id. at 493.

Moreover, in United States v. Garza-Sanchez, 217 F.3d 806, 808 (9th Cir. 2000), the Ninth Circuit held that a Defendant who previously waived his right to appeal cannot collaterally attack his

deportation:

> A Defendant charged under 8 U.S.C. § 1326 may not collaterally attack the underlying deportation order if he or she did not exhaust administrative remedies in the deportation proceedings, including direct appeal of the deportation order. Accordingly, a valid waiver of the right to appeal a deportation order precludes a later collateral attack.

(citations omitted).

In this case, Defendant validly waived his right to appeal his deportation order in 1992 and, therefore, should be precluded from collaterally attacking his deportation. It would be inappropriate to raise this issue before a jury, which is not tasked with determining the validity of the deportation.

**L.     THE COURT SHOULD ADMIT THE DEPORTATION TAPE OR TRANSCRIPT**

The United States should be permitted to play the audio tape of the 1994 deportation hearing because Defendant admits therein his citizenship as part of the colloquy. Such an admission is relevant to the element of alienage. In addition, the United States requests that the jury have a copy of the transcript of the deportation hearing proceeding while the audio tape is played to assist the jury in understanding what was said.

**M.     THE COURT SHOULD EXCLUDE SELF-SERVING HEARSAY**

Defendant's out of court statements are inadmissible hearsay when offered by defendant through witnesses. Defendant cannot rely on Fed. R. Evid. 801(d)(2) because he is not the proponent of the evidence, and the evidence is not being offered against him. Defendant cannot attempt to have "self-serving hearsay" brought before the jury without the benefit of cross-examination. See, e.g., United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).

The United States anticipates that Defendant may try to elicit potentially exculpatory statements from witnesses for the government or the defense. Thus, the United States moves, *in limine*, to prohibit defense counsel from eliciting self-serving hearsay from either government witnesses or defense witnesses.

**N.     DEFENDANT'S FIELD STATEMENTS ARE ADMISSIBLE**

Agent Miller observed Defendant running away from the "Elbow" area which is along the secondary border fence. Agent Miller began pursuing Defendant, then observed Defendant duck into the brush in an attempt to hide. Agent Miller dismounted his all terrain vehicle, Defendant then got up

and began to run. Agent Miller identified himself as a USBP Agent and ordered him to stop. Defendant did not stop, but instead kept running. Agent Miller remounted his all terrain vehicle and again pursued Defendant. While pursuing Defendant, Agent Miller's all terrain vehicle made contact with Defendant. Given the reports of individuals crossing the fence, and Defendant's behavior of fleeing after being ordered to stop, Agent Miller had a reasonable suspicion to stop Defendant. Given that Agent Miller had a reasonable suspicion to stop Defendant, he could ask Defendant questions reasonably related to the purpose for his stop. That Agent Miller pursued Defendant on his all terrain vehicle does not change the nature of his "Terry stop" into a custodial arrest. Nor does the incidental contact between Agent Miller's all terrain vehicle and Defendant, which may have caused Defendant to fall, change the nature of this "Terry stop" into a custodial arrest. Accordingly, Miranda warnings were not required prior to Agent Miller's questioning of Defendant regarding his citizenship, and the nature of the circumstances that brought Defendant to the border area. See United States v. Cervantes-Flores, 421 F. 3d 825 (9thCir. 2005) (use of handcuffs justified by defendant's flight and safety concerns and did not convert the stop into a custodial arrest).

## IV

## **CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Court grant its motions in limine.

DATED: January 2, 2008.

                  Respectfully Submitted,

                  KAREN P. HEWITT
                  United States Attorney

                  S/ A. Dale Blankenship
                  A. DALE BLANKENSHIP
                  Assistant United States Attorney
                  Attorneys for Plaintiff
                  United States of America
                  Email: Dale.Blankenship@usdoj.gov

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JULIO MARTINEZ-HERNANDEZ,<br><br>Defendant. | ) Criminal Case No. 07CR3101-LAB<br>)<br>)<br>) **CERTIFICATE OF SERVICE**<br>)<br>)<br>)<br>)<br>) |

IT IS HEREBY CERTIFIED THAT:

I, A. DALE BLANKENSHIP, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S MOTIONS IN LIMINE TO:**

(A)   EXCLUDE ALL WITNESSES EXCEPT CASE AGENT;
(B)   EXCLUDE EVIDENCE WHY DEFENDANT RE-ENTERED UNITED STATES;
(C)   EXCLUDE EVIDENCE REGARDING PRIOR RESIDENCY;
(D)   ADMIT A-FILE DOCUMENTS;
(E)   ADMIT EXPERT TESTIMONY;
(F)   PROHIBIT REFERENCE TO PUNISHMENT. ETC.;
(G)   PRECLUDE ARGUMENT REGARDING WARNING;
(H)   PROHIBIT ARGUMENT REGARDING DURESS AND NECESSITY;
(I)   PROHIBIT REFERENCE TO DOCUMENT DESTRUCTION;
(J)   ADMIT 404(B) AND 609 EVIDENCE;
(K)   ADMIT DEPORTATION TAPE OR TRANSCRIPT;
(L)   PROHIBIT COLLATERAL ATTACK OF THE DEPORTATION;
(M)   PROHIBIT SELF-SERVING HEARSAY;
(N)   ADMIT STATEMENTS .

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Linda Lopez, Federal Defenders of San Diego, Inc.**
Linda_Lopez@fd.org

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:
**None**
the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 2, 2008.

s/ A. Dale Blankenship
A. DALE BLANKENSHIP