KAREN P. HEWITT
United States Attorney
A. DALE BLANKENSHIP
Assistant United States Attorney
California Bar No. 235960
LAUREN J. BAREFOOT
Assistant United States Attorney
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-6199/(619)235-2757(Fax)
Email: Dale.Blankenship@usdoj.gov

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Case No.  07CR3101-LAB |
| Plaintiff, ) | DATE: January 15, 2008 |
| ) | TIME:  9:00 a.m. |
| v. ) | |
| JULIO MARTINEZ-HERNANDEZ, ) | GOVERNMENT'S TRIAL MEMORANDUM |
| Defendant. ) | |

The UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, A. Dale Blankenship, and Lauren J. Barefoot, Assistant United States Attorneys, hereby files the Government's Trial Memorandum.

//
//
//
//
//
//
//
//
//

**I**

**STATEMENT OF THE CASE**

**A.   Indictment**

On November 14, 2007, a federal grand jury in the Southern District of California returned a one-count Indictment charging Defendant with attempted entry after deportation, in violation of Title 8, United States Code, Section 1326. Defendant was arraigned on the Indictment on November 15, 2007, and entered a not guilty plea.

**B.   Trial Status**

Trial is scheduled for Tuesday, January 15, 2008, at 9:00 a.m., before the Honorable Larry A. Burns, United States District Judge. The Government anticipates that its case-in-chief will last one day.

**C.   Status of Counsel**

Defendant is represented by appointed counsel Linda Lopez of Federal Defenders of San Diego, Inc.

**D.   Custody Status**

Defendant is in custody.

**E.   Interpreter**

The Government does not need an interpreter for its witnesses. The Government anticipates that Defendant may require a Spanish language interpreter.

**F.   Jury Waiver**

Defendant has not filed a jury waiver.

**G.   Pretrial Motions**

On December 11, 2007, Defendant filed the following motions: dismiss the indictment due to improper grand jury instructions; compel discovery; preserve evidence; suppress statements; and leave to file further motions. On December 13, 2007, the Government filed motions for reciprocal discovery and fingerprint exemplars. On December 13, 2007, the Government also filed responses to Defendant's motions.

On December 17, 2007, the Court heard argument on the motions. The Court granted Government's motions for reciprocal discovery and fingerprint exemplars. The Court denied

1  Defendant's discovery motion as moot and denied the remaining motions. The Court set a motions in
2  limine of January 14, 2008, at 2:00 p.m. and a trial date of January 15, 2008. The Court also granted
3  Defendant's request for a competency evaluation.

**H.     Motions in Limine**

On January 2, 2008, the Government filed motions in limine to admit A-file documents, admit expert testimony regarding fingerprint identification, allow FRE 609 and 404(b) evidence, preclude reference to INS recordkeeping and spoliation, preclude evidence or argument regarding duress and necessity, preclude reference to residency or immigration status, preclude reference to the reasons why defendant re-entered the United States, preclude reference to potential punishment, preclude argument regarding the lawfulness of the deportation, exclude witnesses from the courtroom and admit Defendant's field admissions.

**I.     Stipulations**

The are currently no stipulations between the parties.

**J.     Discovery**

The Government has complied with its discovery obligations and has produced 371 pages of discovery, as well as a copy of the audiotape of Defendant's deportation hearing and a DVD copy of Defendant's Miranda advisal. As of this date, Defendant has provided no reciprocal discovery.

**II**

**STATEMENT OF THE FACTS**

**A.     INSTANT OFFENSE**

On October 15, 2007, at approximately 5:20 a.m., a remote video surveillance system ("RVSS") operator observed four individuals climbing over the international border fence in an area known as the "Elbow." This area is approximately 1.5 miles west of the San Ysidro, California, Port of Entry. The "Elbow" is often used by illegal aliens attempting to avoid detection by U.S. Border Patrol ("USBP") Agents while they further their entry into the United States. The RVSS operator reported this observation to USBP Agent Alan Lambert, who, in turn, relayed the information to USBP Agent Lee Miller. Agent Lambert arrived first to the area and apprehended two individuals. Agent Miller arrived next, and he was informed by Agent Lambert that another individual fled north from his location.

Agent Miller began searching the area on his all-terrain vehicle. Agent Miller observed an individual running away from the "Elbow" along the secondary border fence, who then ducked into the brush in an attempt to hide. Agent Miller dismounted his all-terrain vehicle and the individual, later identified as Defendant, Julio Martinez-Hernandez, got up and began to run. Agent Miller identified himself as a USBP Agent and ordered him to stop. Defendant did not stop, but instead kept running. Agent Miller quickly caught up to Defendant and ordered him to stop. Defendant ignored this command also and kept running in an erratic manner, zig-zagging near Agent Miller's all-terrain vehicle. Defendant eventually ran into Agent Miller's left front tire and stopped running.

Agent Miller conducted an immigration inspection. Defendant identified himself as "Jose Perez-Ruiz." Defendant admitted to being a citizen of Mexico, without documents permitting him to enter the United States. Defendant complained that he had pain in his lower right leg. Agent Miller asked if he wanted medical attention and Defendant stated that if Agent Miller would let him go back to Mexico, at that moment, he would not need medical attention. Agent Miller replied that he could not go back to Mexico, right now, and Defendant then declined medical attention.

Defendant was arrested and transported to the Imperial Beach Border Patrol Station for processing. A records search revealed that Defendant's name was not "Jose Perez-Ruiz". Defendant was asked his name again and he replied that he had given a false name in the field and that his name was actually Julio Martinez-Hernandez. The records check also revealed that Defendant was previously deported by an immigration judge and that he had a criminal history.

At approximately 9:05 a.m., USBP Agent Fernando Estrada-Flores advised Defendant of his Miranda rights in the Spanish language and Defendant invoked.

**B.    DEFENDANT'S CRIMINAL HISTORY**

On July 24, 1989, Defendant was convicted of taking a vehicle without the owner's consent in violation of Cal. Vehicle Code § 10851(a), and he was sentenced to 270 days' jail and 3 years' probation. On June 13, 1990, Defendant was convicted of burglary of a locked vehicle in violation of Cal. Penal Code § 459 and he was sentenced to 2 years' prison. On January 21, 1992, Defendant was convicted in the Southern District of California of illegal entry in violation of 8 U.S.C. § 1325, and he was sentenced to 150 days' custody. On April 18, 1993, Defendant was convicted in the Southern

District of California of illegal entry in violation of 8 U.S.C. § 1325, and he was sentenced to 100 days' custody. On September 17, 1993, Defendant was convicted in the Southern District of California of illegal entry in violation of 8 U.S.C. § 1325, and he was sentenced to 160 days' custody. On April 4, 1995, Defendant was convicted of burglary of a locked vehicle in violation of Cal. Penal Code § 459, and he was sentenced to 16 months' prison. On April 4, 1995, Defendant was convicted, in an unrelated case, of two counts of burglary of a locked vehicle in violation of Cal. Penal Code § 459, and he was sentenced to 4 years' prison. On July 31, 2000, Defendant was convicted in the Southern District of California of illegal entry in violation of 8 U.S.C. § 1325, and he was sentenced to 30 months' custody. On October 11, 2002, Defendant was convicted in the Southern District of California of illegal entry in violation of 8 U.S.C. § 1325, and he was sentenced to 24 months' custody and 1 year of supervised release.

**C.     DEFENDANT'S IMMIGRATION HISTORY**

Defendant has been removed from the United States on at least 12 occasions. Defendant has also had numerous immigration hearings. Defendant was most recently removed, pursuant to the reinstatement of an immigration judge's order, on November 25, 2006.

### III

### PERTINENT LAW

**A.     8 U.S.C. § 1326, ATTEMPTED REENTRY AFTER DEPORTATION**

The government must prove each of the following elements beyond a reasonable doubt:

1. Defendant had the conscious desire to reenter the United States without consent;
2. Defendant committed an overt act that was a substantial step towards reentering without consent;
3. Defendant was not a citizen of the United States;
4. Defendant had previously been lawfully denied admission, excluded, deported or removed from the United States; and
5. The United States Secretary of the Department of Homeland Security had not consented to the defendant's attempted reentry.

See Ninth Circuit Model Criminal Jury Instructions, § 9.5A (modified); United States v. Gracidas-Ulibarry, 231 F.3d 1188(9th Cir. 2000).

[1]/

**B.    Alienage**

The Ninth Circuit has held that "deportation documents are admissible to prove alienage under the public records exception to the hearsay rule." United States v. Hernandez-Herrera, 273 F.3d 1213, 1218 (9thCir. 2001)(affirming the admission of deportation documents to prove alienage). The Ninth Circuit also has described the type of deportation documents that may be used as evidence of alienage:

> Although neither a deportation order, see United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997)(citing United States v. Ortiz-Lopez, 24 F.3d 53, 55 (9thCir. 1994)), nor the defendant's own admissions, see United States v. Hernandez, 105 F.3d 1330, 1332 (9th Cir. 1997), standing alone, will support the conclusion that a defendant is an alien, here the government offered Ramirez-Cortez's prior deportation order, admissions Ramirez-Cortez made in his underlying deportation proceeding, and the testimony of an INS agent that his review of Ramirez-Cortez's immigration records reflected that Ramirez-Cortez was an alien. Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that Ramirez-Cortez was an alien, Cf. United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997)(finding sufficient evidence of alienage where the government's evidence consisted of a prior deportation order, the admissions made during the deportation hearing that he was not a United States citizen); United States v. Contreras, 63 F.3d 852, 858 (9th Cir. 1995) (holding that sufficient evidence supported the conviction when the government introduced a prior deportation order, the deportation hearing transcript, which indicated that the defendant admitted his Mexican citizenship under oath, and testimony of an INS agent that the defendant was a Mexican citizen).

United States v. Ramirez-Cortez, 213 F.32d 1149, 1158 (9th Cir. 2000) (emphasis added).

The Ninth Circuit has affirmed the admission of orders to show cause, see Sotelo, 109 F.3d at 1449, admissions made during deportation hearings, see Id., and transcripts, see Contreras, 63 F.3d at 858.

**C.    Physical Removal**

The Ninth Circuit has held that deportation "refers to the removal from the country of aliens who are physically present in the United States." United States v. Romo-Romo, 246 F.3d 1272, 1275-1276

---

[1]   The Government will request a special verdict form indicating that the Defendant was removed subsequent to October 11, 2002. See United States v. Jose Covian-Sandoval, 462 F.3d 1090 (9th Cir. 2006).

1  (9thCir. 2001); see also United States v. Luna-Madellaga, 315 F.3d 1224 (9thCir 2003) ("Section 1326

2  speaks only of 'removal' . . . It plainly turns on the alien's physical removal–not the order of removal.").

3  This holding was affirmed in United States v. Diaz-Luevano, 494 F.3d 1159 (9thCir. 2007) ("Luna-

4  Madellaga held that what matters for criminal reentry purposes is the date of "the alien's physical

5  removal – not the order of removal." Id.  Morales-Izquierdo does not deal with whether reinstatement

6  of a removal order includes physical removal, which it does.  Luna-Madellaga is still good law.") Id.

7  at 1162.  As a result, the United States need only prove beyond a reasonable doubt that Defendant

8  physically left the country some time between the time he was ordered deported and the time he was

9  found in the United States.  See United States v. Bahena-Cardenas, 411 F.3d 1067, 1074-75 (9thCir.

10  2005)(citation omitted).  A warrant of deportation may be sufficient evidence of physical removal.  Id.

**IV**

**WITNESSES**

The United States reserves the right to add, omit, substitute or change the order of witnesses. Presently, the United States intends to call the following witnesses during its case-in-chief:

1. Lee A. Miller, U.S. Border Patrol Agent;
2. Alan J. Lambert, U.S. Border Patrol Agent;
3. Christopher T. Rollins, U.S. Border Patrol Agent;
4. Alexis Carroll, U.S. Border Patrol Agent;
5. Angel L. Flores, Jr., U.S. Border Patrol Agent;
6. David Beers

**V**

**EXHIBIT LIST**

The United States will provide an exhibit list on the morning of trial.  Presently, the United States intends to offer into evidence copies of the following documents:

1. Order to Show Cause (Form I-862) dated January 21, 1994;
2. Audiotape of Deportation Proceeding of April 14, 1994;
3. Order of the Immigration Judge dated April 14, 1994;

4. Notice of Intent/Decision to Reinstate Prior Order (Form I-871) dated November 25, 2006;

5. Warning to Alien Ordered Removed or Deported (Form I-294) dated November 25, 2006;

6. Warrant of Removal/Deportation (Form I-205) dated November 25, 2006;

7. Transcript of Plea Hearing

8. Certificate of Non-existence of Record

9. Google Map Image of Area of Apprehension

10. Photographs of Apprehension Area

Copies of all exhibits have been produced in discovery. The Government will make its exhibits available to Defendant for examination in advance of trial. The Government also requests an opportunity to examine Defendant's exhibits before trial.

## VI

## OTHER LEGAL ISSUES

### A. The Court Should Admit A-File Documents and Testimony

The documents in Defendant's A-file are properly admissible under the public records exception to the hearsay rule. See Fed. R. Evid. 803(8)(B); United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-18 (9th Cir. 2001) ("deportation documents are admissible to prove alienage under the public records exception to the hearsay rule"); United States v. Loyola-Dominguez, 125 F.3d 1315, 1317 (9th Cir. 1997) (finding that although immigration records are made by law enforcement agents, they reflect only "ministerial, objective observations" and do not implicate the concerns of the law enforcement exception). The documents in Defendant's A-file would also be admissible under the business records exception to the hearsay rule. See Fed. R. Evid. 803(6); United States v. Dekermenjian, 508 F.2d 812, 814 n.1 (9th Cir. 1974) (district court properly admitted records and memoranda of the Immigration and Naturalization Service as business records).

The public records exception is "a firmly rooted exception to the hearsay rule" and the admission of these records into evidence would not violate the Confrontation Clause. Hernandez-Herrera, 273 F.3d at 1217-18 (citing United States v. Contreras, 63 F.3d 852, 857 (9th Cir. 1995)); see also Crawford v. Washington, 124 S. Ct. 1354, 1367 (2004) (admission of business records would not violate the

Confrontation Clause because business records are not "testimonial" in nature). Furthermore, the public records exception is one of the few hearsay exceptions that does not require a foundation. Id. Documents that fall under the public records exception "are presumed trustworthy, placing 'the burden of establishing untrustworthiness on the opponent of the evidence.'" Montiel v. City of Los Angeles, 2 F.3d 335, 341 (9th Cir. 1993) (quoting Keith v. Volpe, 858 F.2d 467, 481 (9th Cir. 1988)). These documents will be certified are self-authenticating under Fed. R. Evid. 902(4).

### B.   The Court Should Admit the Certificate of Non-existence of Record

At trial, the Government will introduce a Certificate of Non-existence of Record ("CNR") to establish that Defendant did not have express permission from the Attorney General or the Secretary of the Department of Homeland Security before he reentered the United States.

The CNR does not constitute testimonial hearsay evidence prohibited by Crawford v. Washington, 541 U.S. 36 (2004). Rather, it is properly admitted as a self-authenticating, non-testimonial public record. Fed. R. Evid. 803(10), 902(1); United States v. Cervantes-Flores, 421 F.3d 825, 831-34 (9th Cir. 2005) ("the CNR is nontestimonial evidence under Crawford and thus was properly admitted by the district court"); United States v. Rueda-Rivera, 396 F.3d 678, 680 (5th Cir. 2005) (stating that the documents in a defendant's immigration file are analogous to nontestimonial business records and that "the CNR . . ., reflecting the absence of a record . . ., [does] not fall into the specific categories of testimonial statements referred to in Crawford").

### C.   Duplicates

A duplicate is admissible to the same extent as an original document unless: (1) a genuine question is raised as to the authenticity of the original; or (2) under the circumstances, it would be unfair to admit the duplicate instead of the original. See Fed. R. Evid. 1003.

### D.   EXPERT TESTIMONY

The Government intends to call as a witness a fingerprint expert for the purpose of identifying the defendant as the person who was previously deported. Such expert testimony should be admitted to assist the jury in understanding that this defendant is an alien who attempted to reenter the United States after having been deported. See Federal Rule of Evidence 702; United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). On October 16,

2006, the Government provided written notice of its intention to use expert testimony. This notice also included a written summary of anticipated testimony the United States intends to use pursuant to Federal Rules of Evidence 702, 703, and 705, during the trial in the above-referenced criminal matter.

## VII

## **PROPOSED VOIR DIRE**

1. Is there anyone who has strong feelings about the United States Border Patrol?

2. Does anyone have strong feelings about the Immigration and Naturalization Service – an agency now known as the Department of Homeland Security?

3. Has anyone had a negative experience at the United States-Mexico border?

4. Has anyone traveled in the area of San Ysidro, California? Has anyone had any negative experiences with the United States Border Patrol in that area?

5. Does anyone believe that the United States should have an "open border"?

6. Does anyone believe that the United States Government should not patrol the border it shares with Mexico?

7. Does everyone understand that the Court will instruct you not to consider prejudice, pity or sympathy in deciding whether the Defendant is guilty or not guilty?

8. This case involves a Defendant who is charged with being an alien who was found in the United States illegally after being deported. An alien who is deported from the United States may have sympathetic reasons why he is coming back into the United States. These reasons are irrelevant under the law. Is there anyone who feels that he or she cannot ignore any sympathetic reasons why an alien may reenter the United States in deciding whether the Defendant is guilty or not guilty?

9. Is there anyone who cannot commit to applying the law to the facts, regardless of whether you disagree with the law?

11. In every criminal case throughout the United States, the law requires the Government to prove its case against a defendant beyond a *reasonable* doubt. However, as the Court will instruct you, the law does not require the Government to prove its case beyond all possible doubt. Is there anyone who cannot follow the Court's instructions in this regard and would require the Government to prove this case beyond all possible doubt?

12. The United States must prove its case beyond a reasonable doubt. As the Court will instruct you, a reasonable doubt is based upon reason and common sense, and is not based purely on speculation. Is there anyone who cannot commit to evaluate this case based on your reason and common sense and not base your decision purely on speculation?

# VIII

## JURY INSTRUCTIONS

The United States will submit proposed jury instructions under separate cover.

Dated: January 10, 2008.

                                              Respectfully Submitted,

                                              KAREN P. HEWITT
United States Attorney

S/ A. Dale Blankenship
A. DALE BLANKENSHIP
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: Dale.Blankenship@usdoj.gov

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA, | ) Criminal Case No. 07CR3101-LAB |
|---|---|
| Plaintiff, | ) |
|  | ) **CERTIFICATE OF SERVICE** |
| v. | ) |
| JULIO MARTINEZ-HERNANDEZ, | ) |
| Defendant. | ) |

IT IS HEREBY CERTIFIED THAT:

I, A. DALE BLANKENSHIP, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of:

**GOVERNMENT'S TRIAL MEMORANDUM**

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Linda Lopez**
Linda_Lopez@fd.org

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:
**None**
the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 10, 2008.

s/ A. Dale Blankenship
A. DALE BLANKENSHIP