# US v. JULIO MARTINEZ-HERNANDEZ
# 07CR3101-LAB
# EXHIBIT INDEX

| **DOCUMENT** | **EXHIBIT** |
| --- | --- |
| DR. MATTHEW CARROL'S EVALUATION | A |
| DR. BEATRIZ HELL'S EVALUATION | B |
| DR. JULIO-CESAR ARMENTA'S EVALUATION | C |

# EXHIBIT "A"

# MATTHEW F. CARROLL, M.D.
3131 Camino Del Rio North, Suite 270
San Diego, California 92108
(619) 282-7172   Fax (619) 282-7626

---

January 9, 2008

The Honorable Larry Burns
United States District Court Judge
Southern District of California
940 Front Street
San Diego, California 92101

Re: Julio Martinez-Hernandez
    Case No. 07CR3101-LAB

Dear Judge Burns,

Per your order, I have evaluated Julio Martinez-Hernandez. The purpose of the evaluation was to assess his competency to stand trial in accordance with Title 18, United States Code Section 4241.

## STATEMENT OF NON-CONFIDENTIALITY

Prior to the interview, I informed the Defendant that the interview was not confidential and that all information gathered would be used in a report to be submitted to the Court. The Defendant understood and agreed to proceed with the evaluation.

## SOURCES OF INFORMATION

1. Interview with the Defendant on January 9, 2008, at the MCC.
2. Memo from Linda Lopez dated January 8, 2008.
3. Border Patrol Report.
4. Psychological Evaluations dated September 15, 1999, from Beatriz Heller, Ph.D., and February 4, 2000 from Julio-Cesar Armenta, Ph.D.
5. Magistrate Judge Information Sheet.

Re: Julio Martinez-Hernandez
January 9, 2008
Page 2

## REVIEW OF RECORDS

**Review of Border Patrol record**

Records revealed that on October 15, 2007, at approximately 5:20 a.m., the Defendant was noted to climb over the border fence with other individuals. He was apprehended and admitted to being a Mexican citizen. He was last deported to Mexico on November 25, 2006.

**Review of Magistrate Judge Information Sheet**

This revealed that the Defendant had 6 prior felonies, 3 misdemeanors with 9 prior removals to Mexico. He has 2 illegal entry entry felonies, 3 burglary felonies and a vehicle theft felony.

**Review of Prior Psychological Reports**

Dr Heller wrote a report on September 15, 1999. The Defendant noted, "My lawyer thinks I am crazy, which is not the case." He said his lawyer "doesn't understand things very well." He felt that 30 months was too long a sentence. He justified his right to be in the country by referring to his Indian ancestry.

He had a measured IQ of 76.

Dr, Heller felt that he suffered form a possible pervasive developmental disorder, amphetamine dependence and a personality disorder. Dr. Heller opined that he had severely compromised "common-sense" judgment.

Dr. Armenta saw the Defendant on February 4, 2000. He felt that the Defendant suffered from an organic impairment as a result of illegal drug use since an early age. He opined that the Defendant was not competent to stand trial.

## BACKGROUND HISTORY

In my opinion, the Defendant was not a credible historian. He initially told me that he was an American Indian and he was unsure of his place of birth. He said he grew up in San Diego. When I informed him that I had previous reports regarding his childhood, he told me that he was in fact raised in Mexico and had five siblings. He said his parents were neglectful and he essentially raised himself. He said he had no contact with family members for many years.

Re: Julio Martinez-Hernandez
January 9, 2008
Page 3

## EDUCATIONAL HISTORY

He told me that he never formally went to school. He said he can read a little in both English and Spanish, but cannot write.

## OCCUPATIONAL HISTORY

The Defendant said he worked in the fields. He told me that work is not available for him in Mexico. He fully acknowledged that he would often work so that he could obtain money for Methamphetamine. He admitted to crossing the border to obtain work.

## ALCOHOL AND DRUG HISTORY

He told me that he has been using Methamphetamine since he was a teenager. He uses it every day he can obtain it. He denied using needles and said he usually smokes it, and sometimes snorts it. He denied problems with other drugs or alcohol.

## PSYCHIATRIC HISTORY

He told me that he did not have a history of psychiatric problems. He denied feeling depressed or anxious. He said he has had no psychiatric hospitalizations. When I asked about the prior reports, he told me that he often disagreed with his lawyers. He told me that he had been given some medications in prison, but that the medications only made him "sleepy".

## RELATIONSHIP HISTORY

He said he is single and has no children.

## LEGAL HISTORY

He insisted he only had one prior burglary conviction. He told me that he was innocent, but he was convicted because he was uneducated and spoke both Spanish and English poorly. He went on to tell me that often people do not understand that he is a "good person". He admitted to the vehicle theft charge, but said that he had only driven a car a friend told him to drive. He admitted to all the illegal entry charges. He does not think it should be a crime to cross a border to obtain work. He went on to tell me that Indians were here before the white man so he should not be convicted of a crime.

Re: Julio Martinez-Hernandez
January 9, 2008
Page 4

## MEDICAL HISTORY

He said that he has chronic back and knee pain because a border agent ran over him with a motorcycle. He wants to sue ICE for his injuries.

## COMPETENCY EVALUATION

He told me that he had been arrested for crossing the border. However he insisted that this should not be a crime. He related he is Hispanic and Indian. He noted that his Indian heritage gives him a right to be in the United States.

He complained vehemently about his possible sentence which he said was up to 20 years. He said he had never hurt anyone. He felt that being locked up for 2 or 3 months was unfair.

He understood the role of his attorney. He complained strongly that his attorney was pushing him to take a 30-month sentence and this was not right. He wants his attorney to tell the Judge and jury that he is the victim in this case because an ICE agent hurt him with a motorcycle.

He told me that the prosecutor is bringing "bullshit" charges against him. He related that white people came here and stole the Indians land, so he should not be charged with anything.

The Defendant understood the role of the Judge and jury. He told me that the jury is chosen from "society". He did not say he personally knows any jurors. He was clear that he wants the Judge and jury to know he is a "good person" and that he has never been violent. He feels that a jury will only want to send him back to Mexico.

He told me he was going to plead not guilty. He understood that he could receive a considerably increased sentence if he did not take a deal. He did not know the pleas of no contest or not guilty by reason of insanity, but demonstrated an ability to understand the basic concepts.

## MENTAL STATUS EXAMINATION

The Defendant was cooperative. He spoke with an accent, but was clearly understandable. He related that he preferred to speak English. His eye contact was good. His speech was of normal rate rhythm and volume. He was able to answer questions in a logical and goal directed manner. However he often complained that he was the victim as he was an uneducated Hispanic/ Indian and he was being treated unfairly. He denied thoughts of suicide or homicide. He was not hearing voices or seeing things. His intelligence was clinically below average.

Re: Julio Martinez-Hernandez
January 9, 2008
Page 5

### DIAGNOSTIC IMPRESSION

Axis I:    Amphetamine dependence
Axis II:   Borderline intellectual functioning
Axis III:  Orthopedic complaints.
Axis IV:   Problems with the legal system.
Axis V:    Global Assessment of Functioning: Currently, 60.

### OPINION

1. It is my opinion, with reasonable medical certainty, that the Defendant is competent to stand trial in accordance with Title 18, United States Code Section 4241. In my opinion, he adequately understands the nature and consequences of the proceedings against him and can assist properly in his defense.

2. The Defendant has a lower than average intellect. He has very little formal education. He has a history of using methamphetamines for over 20 years. These factors would make it more difficult for him to work with his attorney. However in my opinion he is not suffering from a mental health disorder that precludes him from assisting properly in his defense.

3. The Defendant understands his charges, the role of courtroom personnel, and his possible penalties. He has been deported nine times in the past and has six prior felony convictions. He has been through the legal system on multiple occasions. In my opinion he can cooperate with his attorney if he chooses to. He has made a choice to claim that he is not guilty due to his Indian heritage. This argument may or may not be legally correct, but this is not a psychotic argument.

Sincerely,

*[signature]*

Matthew F. Carroll, M.D.

# EXHIBIT "B"

# BEATRIZ HELLER, PH.D.
Clinical Psychology

3636 Fourth Avenue, Suite 304
San Diego, California 92103
(619) 294-4200   4: 692-1968
Fax (619) 294-6606

## Report of Psychological Evaluation for Competency

| | |
|---|---|
| Name: | Julio Martinez-Hernandez |
| Date of Birth: | February 20, 1968 |
| Dates of Assessment: | August 27 and September 10, 1999 |
| Date of Report: | September 15, 1999 |
| Case No: | 99-CR-0551-R |
| Requested by: | Sylvia Baiz, Attorney at Law |

### Background Information and Reason for Referral

Julio Martinez-Hernandez is detained at the Metropolitan Correctional Center in San Diego on charges of illegal entry into the country. He is a previously-deported criminal alien with a history of convictions for burglary and one conviction for possession of a controlled substance. When relating to his attorney and the attorney's investigator, Mr. Martinez reportedly showed a "sheer lack of concern" for the possible sentence as well as "lack of understanding of the trial process, even thought it had been explained to him in "several sessions."

This psychological assessment was requested by defense counsel to ascertain the presence and extent of a mental disorder, if any, of significance to his ability to stand trial.

### Assessment Procedures

Attorney Baiz provided the examiner with a description of the background of the case, in addition to a copy of United States Department of Justice Immigration and Naturalization Service Record of Report of Inadmissable Alien dated February 1, 1999.

In addition, the following sources of information were used:

Clinical Interview
Competency Assessment Instrument
Raven Progressive Matrices
Bender Visual-Motor Gestalt Test (BVMGT)
Rorschach Psychodiagnostic Technique

Re:  Julio Martinez                                                                                                           Page 2

**Behavioral Observations and Interview Data[1]**

Julio Martinez-Hernandez is a 31-year-old Mexican-born man estimated to be of average height and build. He has thinking dark hair with uneven, spotted teeth. The discolored spot on his lip is the result, he said, of a burn at a time he could not specify. As a child, his brother hit him, noticeably flattening his nose, for which Mr. Martinez said that he did not receive medical attention and that his mother did not notice the injury. He has a small cross tattooed under his left eye, and other tattoos on his left arm.

The first assessment session had to be discontinued because Mr. Martinez was handcuffed and could not complete the pencil-and-paper tasks. The handcuffs were removed for the second session but he continued to be on disciplinary removal due to a violent altercation with other inmates; Mr. Martinez acknowledged that he has problems getting along with other people but, with poorly articulated arguments, he blamed it on the other men, as he had never a violent altercation while living in the community.

Although he indicated that he speaks "a little bit" of English, with Spanish being his native language, Mr. Martinez lapsed into English in which he was noticed to speak more fluently but with poor pronunciation, language and syntax than in Spanish. On mental status examination, Mr. Martinez was oriented to time, place and person. His memory for concrete events appeared to be intact. He had difficulty in the examination recalling test tasks which, in light of his overall behavior, appears to reflect an attentional deficit rather than in a failure in recalling.

Mr. Martinez appeared to be alert but very distractible. In addition, Mr. Martinez had a great deal of difficulty articulating the mental processes whereby he arrived at a particular conclusion, a feature that was evident not only in his description of his legal problems but when relating his personal history. Some of his arguments were indicative of "street smarts," yet lacked well-rounded reasoning to support them.

Mr. Martinez appeared to be in a cheerful mood, without any reluctance or resentment regarding the examination and with affect that did not vary significantly and was incongruent with the issues discussed. With the same demeanor, he expressed indignation, anger or gleefulness. The overall flavor of his presentation was similar to that of a very young child who has been caught in a mischievous act but who is unwilling to look at his behavior from any point of view other than he is undeserving of punishment.

Asked about his understanding of the reasons for this examination, Mr. Martinez said, "I don [sic] understand nothing." In response to further inquiry, he said, "My lawyer think I am crazy, which is not the case." Mr. Martinez averred that his lawyer "don't understand things very well."

---

[1] When a portion of the history is provided by the patient, the undersigned makes no endorsement as to its validity or accuracy; rather. it is provided as an illustration of his perception of his current situation which contributes to an understanding of his mental state.

Re: Julio Martinez                                                                                                        Page 3

Mr. Hernandez adequately describe court and court procedures in concrete terms. He considers that 10 years of confinement for his offense is too long; he refuses a plea bargain because "30 months is too much." To justify his view, he alternately argued that he was arrested while loitering around the border but not actually in the United States, that "I never do nothing wrong now," or claiming his right to be in this country by referring to his Indian ancestry.

Mr. Martinez gave the following biographical information:

He was born and raised in a small rural community in the state of Oaxaca, Mexico, where he lived until he was about 14 years old, the fifth of six children. Mr. Martinez said that he was raised by both parents. He has not seen his father in 10 years "because I don't like him." He has not seen his mother, either, because "Something is wrong with them." Asked to clarify his last statement, Mr. Martinez said, "I am crazy because I think too much" about the financial limitations and physical abuse that he suffered during childhood.

At age 14, he ran away from his parents' home because "they hit me a lot." There was also a great deal of violence among the siblings. He lived with a grandfather for a year but left again for similar reasons. He then came to the United States where he has lived a mostly transient lifestyle with transitory relationships, unstable employment, and drug usage.

Mr. Martinez first said that crystal methamphetamine, which he began using upon first coming to the United States, was the only drug he has used. Asked about marijuana, he exclaimed, "Oh, yes," as if he had just remembered; with further inquiry he said that he began sniffing cement and paint thinner when he was 13 years old, buying the drugs with money he would steal from his mother who, aware of his drug usage, "threatened me all the time." Mr. Martinez reported that he used crystal methamphetamine on a daily basis, being under the influence "all day long." The last time he used the drug was shortly before his arrest; his is now "trying to get away from it."

Although he took property, Mr. Martinez contended that his actions were not stealing in that "sometimes I was very drunk and it looked easy and if somebody asked me, I told them, 'Excuse me. I only wanted to sleep.'"

In Mexico, Mr. Martinez discontinued school in the eighth grade. He had repeated the first and fifth grades because he was preoccupied with "problems" with his parents, in that they demanded that he help with the farm chores.

Mr. Martinez spoke of his interpersonal relations as transient, including his romantic involvements. He gleefully related that when he was 25 years of age he was in an affair with a 40-year-old woman. By then, he had been sexually active for about 10 years. Mr. Martinez engaged in a great deal of a distractibility operations to avoid answering questions regarding the specifics of those relationships and the characteristics of his partners.

Re: Julio Martinez                                                                                                Page 4

Elicited by one of the Rorschach cards, Mr. Martinez reported what appear to have been auditory and visual hallucinations and an ongoing delusional system whereby members of the Ku Klux Klan want him to be "one of them." Mr. Martinez said that he would receive messages from that organization, some of them painted on the sky. But, he said, he stopped receiving the messages when he discontinued using drugs, that is, since his incarceration. Mr. Martinez explained the change by saying that he was successful in convincing the organization that he would not succumb to their wishes.

Mr. Martinez found the test items to be "crazy," a characterization that increased in frequency as the level of abstraction of the stimulus increased. He appeared to readily understand the test directions but required a great deal of prompting, sometimes unsuccessful, to obtain his compliance. The current findings are considered to provide a valid and reliable picture of Mr. Martinez's mental state.

### Test Findings

The Raven test is a nonverbal instrument for the measure of intelligence considered to be culture free. Mr. Martinez displayed perplexity when first presented with the material but readily grasped the requirements of the tasks. When the problems apparently became too difficult for him to solve, he contended that "I don't know what the rules are." His performance yielded an Estimated I.Q. of 76, which falls within the Borderline range of intellectual ability.

Mr. Martinez's reproductions of geometric designs were of a quality commensurate with his currently measured intellectual potential. His productions were devoid of gross distortions of shape or spatial relationships, but the nature of his errors suggests some impairment in his ability to process information.

His responses to the Rorschach test were too few to draw reliable dynamic postulations. Mr. Martinez had a great deal of difficulty dealing with the lack of structure of the stimulus. The few responses that he gave were of content and quality commensurate with his intellectual ability.

There were indications that Mr. Martinez was attempting to present himself as a rational, fair-minded person with no difficulties in grasping and adhering to conventionality and judgment. His test responses strongly suggest deficits in his ability for planning and anticipation, understanding causal chains, and maintaining a line of thinking to its logical conclusion.

### Diagnostic Impressions

This section meets the guidelines for the classification of mental disorder presented in *Diagnostic and Statistical Manual - IV*:

| | | |
|---|---|---|
| Axis I | 299.80 | Rule out pervasive developmental disorder NOS |
| | 304.40 | Amphetamine dependence, in early full remission due to incarceration |

Re: Julio Martinez                                                                                                  Page 5

|          | 304.90  | Other substance dependence, in early full remission due to incarceration |
| Axis II  | V62.89  | Borderline intellectual functioning |
|          | 301.9   | Personality disorder NOS |
| Axis III | 799.9   | Diagnosis deferred |
| Axis IV  |         | Current legal situation; incarceration |
| Axis V   | 40      | (Current) |

## Summary and Recommendations

Julio Martinez-Hernandez is a 31-year-old Mexican national who was arrested on charges of illegal entering after deportation. He has a history of similar offenses and convictions for burglary, one which is drug related. His attorney reported serious difficulties in imparting an understanding of the current legal situation to Mr. Martinez.

At this time, Mr. Martinez was not deemed to be mentally retarded, psychotic or severely depressed. He presents with severe and pervasive deficits in the development of reciprocal social interactions, with stereotyped behavior and interests, and a delusional system of mild intensity. These findings are usually associated with schizophrenia although at this time Mr. Martinez does not present with positive symptoms such as hallucinations or disorientation.

His common-sense judgment is severely compromised by the delays in his development. With information available at this time, no firm etiological conclusions can be reached. The implications of his self-descriptions indicate a man who had problems learning, was the victim of poverty and physical abuse, was involved in opportunistic and transient relationships, and who had an overall fleeting lifestyle and a severe chemical dependency problem. The clinical evidence suggests the presence of a longstanding personality disorder and pervasive developmental delay, all aggravated by continuous use of chemical substances since being a pre-teen.

Regarding to issues important to the determination of his mental competency, Mr. Martinez demonstrated a rationally adequate understanding of the roles of persons involved in the current procedures. He adequately reported the charges as well as their possible consequences.
Mr. Martinez does not have an understanding of the nature of the attorney-client relationship, a result of cognitive deficits and, more significantly, of his psychological delays and personality disorder. Consequently, he is very unlikely to actively cooperate in his own defense if it includes any degree of acknowledgment of responsibility.

Beatriz Heller, Ph.D.
BH:int

# EXHIBIT "C"

**JULIO-CESAR ARMENTA, Ph.D.**                                      PSY 13633

Clinical Psychology                                      Telephone (619) 470-3388
Forensic Psychology
Consulting Psychology

P.O. Box 143
Bonita, CA 91908-0143

815 Third Avenue, Ste. 211
Chula Vista, CA 91911

## COMPETENCY EVALUATION

### Identifying Information

Requested by:   Sylvia Baiz, Attorney at Law
Name:           Julio Martinez-Hernandez
Birthdate:      02/20/68 (32 years)
Date seen:      02/04/00

### Referral Information

Mr. Julio Martinez-Hernandez was referred by his court appointed attorney, Ms. Sylvia Baiz, for evaluation of competency to stand trial on charges of illegal entry into the country. The assessment was conducted at the Metropolitan Correctional Center (MCC). Prior to this evaluation Mr. Martinez-Hernandez was examined by Dr. Beatriz Heller who on 09/15/99 found him unable to understand the role of the persons involved on the legal procedures.

### Background Information

Ms. Sylvia Baiz provided the following background information:

Report of Psychological Evaluation for Competency, dated 09/15/99, signed by Beatriz Heller, Ph.D.
Record of Deportable/Inadmissible Alien dated 02/01/99 from United States Department of Justice Immigration and Naturalization Services

The documentation indicated that Mr. Martinez-Hernandez was deported from the United States five times since November 1989 until September 1998. Since 1989 until 1993 he was arrested four times for illegal entry to the country. On February 1, 1999 Mr. Martinez-Hernandez was arrested again by a Border Patrol Agent.

The files examined listed Mr. Martinez-Hernandez's criminal history since 1987 to 1995. The documentation enumerates seven convictions for property crimes.

### Method of Evaluation

The following psychometric tools were used in this study:

1. Georgia Court Competency Test (GCCT)
2. Rorschach Psychodiagnostic Techniques
3. Test of Nonverbal Intelligence (TONI-2)
4. Thematic Apperception Test (TAT)

As part of the assessment a mental status examination and a psychodiagnostic interview were conducted. The interaction with the examinee and the administration of the psychometric tools was carried out in Spanish, as Mr. Martinez-Hernandez stated that Spanish was his primary language.

### Clinical Interview and Psychosocial History

Mr. Martinez-Hernandez spoke with the examiner mainly in Spanish, but occasionally he produced some sentences in English. He indicated that he was born in a family of "about five or six siblings" in San Pedro Rincon, a small town in the Mexican state of Oaxaca. When he was pressed for details he reported that he has five siblings all of them begot by the same parents. He disclosed that his mother died, but he said to be unaware of the reasons from her death or when she died. He believes that his father is still alive. The last time he saw his father was about fifteen years ago. The examinee added that he was confused and said: "Sometimes, I introduced myself to them, but they do not understand me." When he was asked to whom he was referring to, he said that he introduces himself to his brothers and sisters. He explained that he used drugs and he believes that he lost his mind ("quede loco."), he added, "I am a good person."

Discussing his drug use Mr. Martinez-Hernandez said that he used crystal methamphetamine on a daily basis for ten years, since the age of fifteen. He stated that he also used marijuana. By his account he used methamphetamine about "every fifteen minutes." He explained that the drug was given to him to be sold, but he used it. The examinee indicated that he used the marijuana to bring him "down" from the effect of the methamphetamine so he could be able to sleep.

Regarding his legal history Mr. Martinez-Hernandez stated that he has been incarcerated four times on robbery charges. He explained: "for small crimes, they made it a serious issue". He reported that he was illegally in this country and offered: "I am very confused; I have a racial problem."

When the possibility of a head trauma was explored Mr. Martinez-Hernandez said that at one point when he entered to this country he was assaulted at the border and was left unconscious for an undetermined time. Later on he found himself walking on the streets.

His early history, as reported by the examinee, indicated that he went to the school for six years. He repeated first grade tree times. He also repeated the fifth grade. Eventually he left the school because he could not concentrate. Shortly after that he came to this country. He recalled that his parents asked him to stay in his hometown. Upon inquire he claimed to be unable to recall if he was living with his parents. He stated that his father used to beat him up and that he still had nightmares about those experiences. Then he stated: "I do not remember. I am tired of all that bull shit. I try to forget about that thing. I had misbehaved too. I have to forget about it."

When his understanding of the court procedures was explored with an instrument he evidenced a poor understanding of the layout of the courtroom and the roles of the participants. He indicated that the jury seats behind him and he was very persistent explaining that he does not seat in his appearances on court. He was unable to identify what the judge, the jury or the witnesses do. When the role of her lawyer was explored the examinee stated that her lawyer never said in court what he ask her to say, nevertheless, he stated that he believes she is trying to help him.

When his understanding of the role of the people watching the trial was explored Mr. Martinez-Hernandez said that they are watching him because they think that he knows things about them, and that they want to put him on jail so he does not bother them anymore.

He stated that he is being charged with being illegally in this country. He said that he came to work here. He was unable to provide an adequate explanation of the charges and went to explain that he belongs to this continent and that he is half-Indian. To the question what was would happen to him if a jury found he guilty, he stated that he would be in jail for some time. "I want them to give me the electric chair if am going to get a lot of time."

When his thoughts during the court procedures where explored the examinee indicated that occasionally he has felt that people in the room know his thoughts; he added that they made fun of him. He stated that about five years ago the police used mind control means to get him to say things against his will. He stated that it is not happening now. He indicated that when the witnesses are asked to swear an oath "they are upset because they can not control me."

On the previous evaluation for competency Mr. Marinez-Hernandez provided an account that was in general is consistent with the report obtained in this study. There are some inconsistencies on the data and the drugs used. For instance to the previous examiner he indicated that he has not seen his father in

ten years. He also indicated that he began sniffing cement and paints thinner at age thirteen.

## Mental Status Examination and Behavioral Observations

Julio Martinez-Hernandez is a primarily Spanish speaking adult male who has some ability to understand and communicate in English. He said that he was 5 feet and 6 inches tall, but said to be unaware of his weight. He had short hair and he was dressed in the Metropolitan Correctional Center's coveralls. He was cooperative and able to establish appropriate eye contact. He displayed a number of large tattoos on his left and right arm. Laughing he identified one of the tattoos as the name of his mother. His affect was broad and frequently he laughed inappropriately when he was describing events that supposed to be painful. His approach to the testing material was inconsistent. For most part he appeared to show little concern for the results, and occasionally appeared to lose track of the task at hand. The examinee was fully oriented to time, person, place and situation (his awareness of his whereabouts and identity was intact and he was aware of being evaluated by a psychologist.) Although it cannot be assumed that he understood the legal significance of the examination.

Mr. Martinez-Hernandez indicated that he is not suffering any physical impairment and that his visual and auditory functioning is intact. His remote, recent, and immediate memories appeared impaired. He was in touch with reality, but he admitted having some paranoid ideation. He denied any suicidal or homicidal ideation. His social judgment and his ability for abstract thinking were impaired. His potential for insight was extremely reduced.

## Analysis of Findings

The examinee's cognitive abilities were evaluated using a test (TONI-2) that assesses the ability to resolve novel problems without using knowledge generally acquired at school. The test was selected because the examinee appeared to undergo an acculturation process with limited familiarity with the English language. He gained a score of 85, which places his functioning at the Low Average (80-89) range of cognitive skills. The measure was deemed to be an accurate description of his potential. The margin of error, with a 95% level of confidence, is three points above and below the obtained score.

When a test to explore organic impairment affecting eye-hand coordination was administered (BVMG), it was found that the examinee is not displaying gross neurological malfunctioning in that area.

To outcome of the projective instruments (Rorschach, TAT) provided limited information, as the examinee was unable to deliver an appropriate number of responses for a formal scoring. The content of his responses was very concrete which prevented an interpretation of his responses. However, the tests' results appear to confirm the limited intellectual sophistication of the examinee.

The results of the Georgia Court Competency Test (GCCT), a brief quantifiable assessment instrument, indicates that the examinee has a limited knowledge of the court room procedures, has a limited understanding of the charges and the penalties and lack the ability to communicate rationally with his attorney. From the clinical perspective his judgment is impaired by a delusional thinking characterized for the belief that other people are trying to harm him and that others have unusual powers that may affect him. He appears to experience periodic involvement on those beliefs which may change on intensity from time to time. Mr. Martinez-Hernandez scored well below the cutoff point for competency on the Georgia Court Competency Test.

### Understanding of the Legal Situation

The outcome of the assessment indicated that at this time the examinee is unable to cooperate in his own defense and that he is unable to fully understand the court procedures, to understand the charges and the possible penalty. He clearly does not understand the process of confrontation of witnesses.

The examinee appeared to suffer a significant memory loss and it is questionable whether he would be able to keep events of a trial in sequence in his mind. He has numerous misconceptions and gaps in knowledge about the process of a trial. Mr. Martinez-Hernandez's ability to engage in abstract thinking is so minimal that it made him unable to conceptualize the role of various participants in a trial.

Mr. Martinez-Hernandez's lack of understanding of the legal procedure does not appears to be a function of his limited cognitive abilities or his reduced acculturation, it appears to be the result of an organic impairment associated with the chronic abuse of drugs since early age.

### Conclusions Concerning Competency to Stand Trial

Mr. Martinez-Hernandez's lapses in his functioning appear to be largely the result of a brain damage, probably as a result of his chronic drug abuse since early age. It is believed that his intellectual limitations, or his reduced level of acculturation and assimilation, are less critical on limiting his understanding of the court procedures. By large, his impairment associated with memory lapses, his limited abilities for abstract thinking and impairments on attention are deemed to be the result of an organic deficit.

*/Armenta/*
Julio Cesar Armenta, Ph.D
Clinical Psychologist

JCA/sws