1  **STEPHEN D. DEMIK**
   California Bar No. 221167
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California  92101-5008
   Telephone:  (619) 234-8467
4

5  Attorneys for Mr. Julio Martinez

6

7

8                      UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10                    **(HONORABLE LARRY A. BURNS)**

11  UNITED STATES OF AMERICA,          )    Criminal No. 07CR3101-LAB
                                       )
12                    Plaintiff,       )    DATE: February 1, 2008
                                       )    TIME: 2:00 p.m.
13  v.                                 )
                                       )    STATEMENT OF FACTS AND
14  JULIO MARTINEZ-HERNANDEZ,          )    MEMORANDUM OF POINTS AND
                                       )    AUTHORITIES IN SUPPORT OF
15                    Defendant.       )    DEFENDANT'S MOTIONS *IN LIMINE*
                                       )
16  _____   )

17                                **I.**

18                      **STATEMENT OF FACTS**

19        Mr. Martinez is charged with Attempted Illegal Entry into the United States in violation of Title 8,

20  United States Code § 1326.  Mr. Martinez hereby incorporates the statement of facts from the memorandum

21  of points and authorities in support of previous motions.

22                                **II.**

23  **THE GOVERNMENT MUST BE PRECLUDED FROM USING DEPORTATION**
    **DOCUMENTS AS EVIDENCE OF ALIENAGE**
24

25  **A.    The Warrant of Deportation and the Order of Deportation Are Only Admissible to**
        **Establish the Fact of the Deportation, *Not* Alienage**
26

27        Mr. Martinez expects that the government will seek to introduce a warrant of deportation and an

28  order of deportation to establish the fact of his alleged deportation.  These two documents are admissible

1    *only* to establish the fact of the deportation.  See, e.g., United States v. Contreras, 63 F.3d 852, 857 (9th Cir.

2    1995); United States v. Hernandez-Rojas, 617 F.2d 533, 535-36 (9th Cir. 1980).  Neither the warrant of

3    deportation nor the order of deportation reflect the "objective, ministerial fact" of alienage; accordingly,

4    neither are admissible under Federal Rule of Evidence 803(8)(B) to establish the fact of alienage.

5        Both the warrant of deportation and the order of deportation reflect the ministerial fact of the

6    *deportation*, not Mr. Martinez's alleged alienage.  As the Ninth Circuit has explained:

7        **Clearly it would be improper for the government to rely on factual findings from a
         deportation hearing to prove an element of the crime of illegal reentry, as the burden
8        of proof in a criminal proceeding requires a greater showing by the government than
         in an administrative hearing.**  The use of a deportation order to prove the element of
9        alienage would allow the government to skirt around the more stringent requirements of a
         criminal proceeding by relying on that factual finding from the INS proceeding.  To put it
10       more simply, the government would demonstrate that Medina is an alien by showing that the
         INS found that he was an alien.

11

12   United States v. Medina, 236 F.3d 1028, 1030, 1031 (9th Cir. 2001) (emphasis added).  Simply put, alienage

13   is not a fact that is observed; it is a fact that is "found" by an INS official after an administrative hearing,

14   and the order of deportation reflects the quintessential "factual finding" rendered after an administrative

15   hearing.  Likewise, the warrant of deportation reflects only that an immigration judge found Mr. Martinez

16   to be an alien after an administrative hearing, and that Mr. Martinez may have been removed from the

17   United States after that deportation—it has no bearing whatsoever on the fact of alienage.  Accordingly, the

18   warrant of deportation and order of deportation are not admissible under Federal Rule of Evidence 803(8)

19   or Federal Rule of Evidence 401 to establish the fact of alienage.[1]

20       Finally, to the extent that this Court finds that these documents are relevant under Federal Rule of

21

22       [1]    In United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-1218 (9th Cir. 2001), the
     Ninth Circuit stated summarily that A-file documents are admissible under Federal Rule of Evidence
23   803(8)(B) to establish the fact of alienage.  Because the court failed to set forth any reasoned discussion,
     failed to discuss the decision in Medina, and did not specify which documents from the A-file were
24   admitted in Mr. Hernandez-Herrera's case, see id., this case is not binding authority, and this Court must
     still address this issue.  See, e.g., Miranda B. v. Kitzhaber, 328 F.3d 1181, 1186 (9th Cir. 2003) (per
25   curiam) (requiring "reasoned consideration in a published opinion" for a "ruling [to] becom[e] the law of
     the circuit"); United States v. Collicott, 92 F.2d 973, 980 n.4 (9th Cir. 1996) (holding that prior Ninth
26   Circuit case is not binding "in the absence of reasoned analysis and analogous facts").  In any event,
     Hernandez-Herrera never held that these documents were admissible under Federal Rules of Evidence
27   401 or 403 or the Fifth and Sixth Amendments.  See Webster v. Fall, 266 U.S. 507, 512 (1925) (stating
     that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled
28   upon are not to be considered as having been so decided as to constitute precedent").

1    Evidence 401, these documents should still be excluded pursuant to Federal Rule of Evidence 403, because

2    their probative value is substantially outweighed by their prejudicial effect.  Both the order of deportation

3    and warrant of deportation make reference to an "alien;" even more troubling, in the context of these

4    documents, the term "alien" is associated *with* Mr. Martinez, who presumably is the "alien" to which the

5    documents refer.  In the face of these quasi-official government documents proclaiming Mr. Martinez to be

6    an "alien," there is a real danger that jurors will no longer see the alienage element of 8 U.S.C. § 1326 as

7    an open question that the government must prove beyond a reasonable doubt.

8        Should the Court nonetheless admit these documents, Mr. Martinez requests that this Court instruct

9    the jury, pursuant to Federal Rule of Evidence 105, that it may only consider the warrant of deportation and

10    the order of deportation to establish the fact of the deportation and for no other purpose, and that these

11    documents do not, in and of themselves, establish the fact of alienage.  Mr. Martinez further requests that

12    this Court redact these documents to exclude any reference to his alleged alienage.

13    **B.    None of the Other A-File Documents Are Admissible By the Government Under Any Rule of
         Evidence.**

14

15        Mr. Martinez anticipates that the government may seek to admit other documents from the A-file,

16    including the notice to appear/order to show cause why a person should not be deported and warnings

17    regarding the possible penalties for reentry.  None of these documents from the A-file are admissible by the

18    government to establish any matter at issue in this trial.  All documents from the A-file—except the warrant

19    of deportation and the order of deportation discussed previously—are irrelevant under Federal Rule of

20    Evidence 401; more prejudicial than probative, cumulative, and a waste of time under Federal Rule of

21    Evidence 403; and inadmissible hearsay under Federal Rule of Evidence 803(8).

22        **1.    The Notice to Appear Is Inadmissible.**

23        The Notice to Appear is inadmissible under Federal Rules of Evidence 401, 403, and 803(8).  The

24    Notice to Appear is a document that provides an alien with *notice* of the grounds for removal.  It does not

25    record the "objective, ministerial fact" of alienage or of a deportation any more than an indictment provides

26    an objective observation that a person committed a crime.  This document is nothing more than an

27    *accusation* that the government must prove in an immigration proceeding.

28

1    **2.      The Warnings of Possible Penalties Is Inadmissible.**

2        Likewise, the warning of possible penalties is inadmissible under Federal Rules of Evidence 401,

3    403, and 803(8).  The warning of possible penalties contains boilerplate statements (drafted by the former

4    INS) regarding the penal consequences to an alien who illegally reenters the country.  It has no bearing on

5    whether a defendant is in fact an alien, and it makes no fact at issue in this case more or less probable. This

6    document contains inadmissible hearsay, and is completely irrelevant.  It is also more prejudicial than

7    probative.  Among other things, given the serious consequences listed on the warning of possible penalties,

8    jurors may be led to speculate what this defendant did to be subject to such harsh penalties upon reentry;

9    needless to say, such speculation is completely irrelevant to the charge at hand and could be severely

10   prejudicial.  Accordingly, the warnings of possible penalties also must be excluded at trial.

11   **3.      If this Court Finds That These Documents Are Somehow Relevant,  They Are Not
12            Admissible to Establish Alienage; Thus, This Court Should Provide the Jury With a
             Limiting Instruction.**

13       To the extent that this Court finds any A-file document relevant to some point, the document is not

14   admissible to establish Mr. Martinez' alienage.  Accordingly, this Court should redact these documents to

15   exclude all references to alienage.  Additionally, the Court should instruct the jury as to the limited value

16   of such documents pursuant to Federal Rule of Evidence 105.

17   **C.    This Court Must Preclude the Admission of the A-file Documents to Establish Alienage to
18          Protect Mr. Martinez's Constitutional Rights.**

19       Finally, this Court must preclude the admission of A-file documents to establish the fact of alienage

20   to protect Mr. Martinez' rights to confrontation of witnesses and to a jury trial based upon proof beyond a

21   reasonable doubt—rights guaranteed by the Fifth and Sixth Amendments.  Because the right to confrontation

22   is not applicable in immigration proceedings, the government may have met its burden of proving alienage

23   in such a proceeding based upon otherwise inadmissible hearsay.  Cunanan v. INS, 856 F.2d 1373, 1374 (9th

24   Cir. 1988).  Similarly, because a criminal defendant such as Mr. Martinez never has the opportunity to

25   confront those witnesses upon whose hearsay statements the immigration judge may have relied, the

26   admission of the (former) INS' evaluation of alienage deprives a defendant of his right to confront the

27   witnesses against him.

28

1    Additionally, in immigration proceedings, the government need only establish alienage by clear and

2    convincing evidence.  Murphy v. INS, 54 F.3d 605, 608-610 (9th Cir. 1995).  Once the government has

3    established a person's foreign birth, the burden shifts to the purported alien to establish, by a preponderance

4    of the evidence, that he falls within one of the statutory provisions for derivative citizenship.  Id.  Given the

5    lower burden of proof and the shifting presumption, the admission of A-file documents against a criminal

6    defendant to establish the fact of alienage has the effect of lowering the government's burden of proving

7    alienage in the criminal trial.

8    Finally, a determination of alienage by a quasi-judicial decision-maker represents powerful evidence

9    of an element of the offense, and it creates a substantial risk that the jury will give this evidence undue

10   weight or conclusive effect.  Cf. Nipper v. Snipes, 7 F.3d 415, 418 (4th Cir. 1993) (internal quotations

11   omitted) (stating "judicial findings of fact 'present a rare case where, by virtue of there having been made

12   by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair

13   prejudice'"); Federal Rules of Evidence 803(22), Advisory Committee Note (observing that "it seems safe

14   to assume that the jury will give [evidence of a criminal judgment] substantial effect unless defendant offers

15   a satisfactory explanation").  The government's introduction of a government agency's finding of alienage

16   to establish the fact of alienage carries with it the imprimatur of governmental, if not judicial, approval.  The

17   admission of this factual finding undermines a defendant's constitutional right to a reliable jury finding of

18   an essential element.

19   In sum, because the A-file documents are generated by the government without the constitutional

20   safeguards surrounding criminal proceedings, it is unconscionable and constitutionally untenable to

21   authorize their admission, as evidence of alienage, in a criminal prosecution.  This Court should exclude

22   these documents in their entirety; or, to the extent the Court finds that these documents are admissible to

23   prove some other fact, it should redact these documents to exclude reference to Mr. Martinez's alienage and

24   instruct the jury as to the documents' limited relevance.

25   //

26   //

27   //

28

1

**III.**

2
3

**THE CERTIFICATE OF NONEXISTENCE OF RECORD IS INADMISSIBLE BECAUSE IT VIOLATES THE CONFRONTATION CLAUSE OF THE U.S. CONSTITUTION AND ALLOWS THE GOVERNMENT TO CIRCUMVENT ITS DISCOVERY OBLIGATIONS**

4
5
6
7
8
9
10
11
12

Mr. Martinez has received notice that the government intends to introduce a Certificate of Nonexistence of Record (hereinafter "CNER") at trial, although he has not received any document in discovery.  Mr. Martinez assumes that the government will not attempt to use such a document. Nonetheless, this document is inadmissible because it violates the Confrontation Clause.  U.S. Const. Amend VI; Crawford v. Washington, 541 U.S. 36 (2004) (holding that admission of testimonial statements of a witness who does not appear at trial and who the defendant did not have a prior opportunity to cross-examine violates the confrontation clause of the Sixth Amendment).  But see United States v. Cervantes-Flores, 421 F.3d 825,(9th Cir. Aug. 24, 2005) (holding that CNER is non-testimonial).  If the government changes its position on this issue, Mr. Martinez objects to the introduction of this document.

13

**IV.**

14
15

**THIS COURT SHOULD PRECLUDE ANY EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(B) AND 609.**

16

**A.      Exclusion of Other Acts Evidence Under Rules 404(b)and 403.**

17
18
19
20
21
22
23

The government carries the burden of showing how any other acts evidence is relevant to one or more issues in the case; therefore, "it must articulate precisely *the evidential hypothesis* by which a fact of consequence may be inferred from the other acts evidence."  United States v, Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (citing United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979)) (emphasis added); accord United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993).  Because the government evidential hypothesis is insufficient, this evidence must be excluded under Federal Rules of Evidence 401, 404(b) and 403.

24

**B.      Exclusion of Prior Convictions to Impeach Witness Under Rule 609.**

25
26
27

Federal Rule of Evidence 609(a)(1) restricts impeachment of the accused by evidence of a prior conviction to only those offenses for which the court determines that the probative value outweighs its prejudicial effect to the accused.  The government should be precluded from introducing any evidence of

28

prior convictions because they are irrelevant under Federal Rule of Evidence 401, and prejudicial under Federal Rule of Evidence 403. Any prior offense does not make the existence of any fact that is of consequence more or less probable, nor has any relevance to any element of the present charge against Mr. Martinez. Even if Mr. Martinez were to testify at trial, the danger of unfair prejudice would substantially outweigh any possible relevance of his prior offense. Fed. R. Ev. 401, 403, 609.

To the extent that this Court rules that Mr. Martinez's alleged prior convictions are admissible under Federal Rule of Evidence 609, this Court should redact any documents referencing, and preclude the prosecutor from referring to, the offense and specific facts of any crime for which Mr. Martinez was convicted. Such information would be more prejudicial than probative of Mr. Martinez' guilt of the charged offense.

## V.

### THE COURT SHOULD REQUIRE THE GOVERNMENT TO REDACT THE INS A-FILE DOCUMENTS

If the Court does allow admission of any INS A-file documents, it should require the government to redact certain portions (on relevance, unfair prejudice, and hearsay/confrontation clause grounds):

First, any mention, or implication, that Mr. Martinez was previously convicted of any crime. See FED. R. EVID. 403 and 404(b).

Second, any reference to Mr. Martinez using an alias (including in the certificate of non-existence). See FED. R. EVID. 403.

Third, any reference to Mr. Martinez as an "alien," as that is an issue for the jury to decide.

## VI.

### THE COURT SHOULD NOT SEND THE INDICTMENT INTO THE JURY ROOM DURING DELIBERATIONS

Neither the Federal Rules of Criminal Procedure nor case law requires sending a copy of the indictment to the jury room, because the indictment is not evidence. As the commentary to Model Instruction 3.2 ("Charge Against Defendant Not Evidence") indicates, special care must be taken if the

07CR3101-LAB

indictment is sent into the jury room during deliberations. Thus, the better practice is not to send the indictment into the jury room.

Mr. Martinez urges this Court to follow the Committee's guidance. The language in the instant indictment "tracks" the language of the charged statutes. Accordingly, it is probable that jurors will be persuaded by the similarities alleged in the indictment returned by the grand jury and the elements which must be proven in the charged statutes to speculate that *another* jury—the grand jury—already made the relevant determinations in this case. Similarly, the indictment recites that "the grand jury charges," and this could persuade those jurors without experience with the grand jury system that another jury had already found Mr. Martinez guilty. Mr. Martinez also requests that this Court caution the jury that the indictment is not evidence. See United States v. Utz, 886 F.2d 1148, 1151-1152 (9th Cir. 1989).

## VII.

## THIS COURT SHOULD ALLOW ATTORNEY-CONDUCTED VOIR-DIRE

Pursuant to Rule 24(a), Federal Rules of Criminal Procedure, to provide effective assistance of counsel and to exercise Mr. Martinez right to trial by an impartial jury, defense counsel requests the opportunity to personally voir dire the prospective members of the jury.

This is especially required in Mr. Martinez's case, since specific intent is the contested issue. This will require the jury to (1) scrupulously refrain from considering punishment, see Model Jury Instruction 7.4 ("Jury Consideration of Punishment"), (2) impartially weigh expert testimony with regards to diminished capacity and specific intent, *infra*, and (3) there is considerable risk that potential jurors will not weigh Mr. Martinez's defense in this case neutrally in light of the cultural phenomenon of the "tweenkie defense." See Exhibit A.

## VIII.

## THIS COURT SHOULD PRECLUDE THE WITNESSES FROM REFERRING TO MR. MARTINEZ AS "THE ALIEN"

To convict Mr. Martinez, the government must prove that he is an "alien." See 8 U.S.C. § 1326. "Alien" is a legal term that must be defined by this Court. See Berry v. City of Detroit, 25 F.3d 1342 (6th Cir. 1994) (responsibility of court, not testifying witnesses, to define legal terms); Fed. R. Evid. 704(a).

1   It is also a finding that the jury must make; thus, no witness is permitted to opine that this element has been

2   proved. <u>See</u> <u>United States v. Espino</u>, 32 F.3d 253, 257 (7th Cir. 1994) (question whether the defendant was

3   "admitting the conspiracy" was improper because it required a legal conclusion).

4          The government likely will call several witnesses from the Department of Homeland Security (DHS),

5   specifically, the A-file custodian, border patrol agents, and detention enforcement officers.  Because the

6   DHS has accused Mr. Martinez of being an alien, it is anticipated that these witnesses will refer to Mr.

7   Martinez as "the alien."  If these witnesses testify that Mr. Martinez is an alien, it will create confusion

8   among the jurors regarding this Court's instructions on the law and what the government has—or has

9   not—proved, in violation of Federal Rule of Evidence 403.  It will also subvert Mr. Martinez' right to a jury

10  finding of every essential element—a right guaranteed by the Fifth and Sixth Amendments.  Accordingly,

11  this Court should preclude the witnesses from referring to Mr. Martinez as "the alien."

12                                               **IX.**

13  **THIS COURT SHOULD PRECLUDE THE A-FILE CUSTODIAN FROM TESTIFYING**
    **ABOUT IMMIGRATION PROCEEDINGS**

14

15          Under the Fifth and Sixth Amendments, a defendant has a constitutional right to a fair trial and to

16  confront witnesses.  Additionally, evidence must be relevant and not create confusion or be prejudicial.  Fed.

17  R. Ev. 401, 403.  Finally, no lay witness is permitted to offer an opinion or testify about specialized

18  knowledge.  Fed. R. Ev. 702; <u>United States v. Figueroa-Lopez</u>, 125 F.3d 1241, 1245 (9th Cir. 1997) (expert

19  opinion need not be based upon highly technical knowledge; it may be based upon knowledge which would

20  be "unfamiliar" to "the ordinary juror").

21          In this case, defense counsel expects that the government will call the A-file custodian to establish

22  the foundation for the admission of selected documents from Mr. Martinez' A-file.  It is also expected that

23  the government will ask the A-file custodian how immigration proceedings work and what occurs when an

24  individual is physically deported.  Such testimony is inadmissible under Federal Rules of Evidence 401, 403,

25  702, 802, and its admission would violate Mr. Martinez's rights to a fair trial and to confront witnesses

26  under the Fifth and Sixth Amendments.  For example, it is unlikely that the A-file custodian has participated

27  in deportation proceedings as either an immigration judge, an immigration attorney, a deportation

28

1  enforcement officer, or a deportee; thus, she would not be testifying from her own personal knowledge, but

2  rather from the hearsay statements of other people who were not presented by the government for cross-

3  examination by Mr. Martinez. Accordingly, this Court should preclude the

4  A-file custodian from testifying about how immigration proceedings work and about the significance of

5  documents related to those proceedings. Rather, assuming the Court finds the A-file documents admissible

6  despite Mr. Martinez' arguments to the contrary, this Court should limit the A-file custodian's testimony

7  to laying a foundation for the admission of the A-file documents—and only then to the extent that the A-file

8  custodian has the personal knowledge necessary to lay that foundation.

9  **X.**

10  **THIS COURT SHOULD PRECLUDE THE A-FILE CUSTODIAN FROM TESTIFYING
ABOUT SEARCHING DATABASES FOR PERMISSION TO REENTER**

11

12  Recently, the government has taken to streamlining its 8 U.S.C. § 1326 trials by having the A-file

13  custodian testify regarding a defendant's lack of permission to reapply for admission to the United States.

14  Typically, this consists of the agent's explaining that she searched two databases and the A-file for a so-

15  called "I-212" form by which an alien can apply for permission to reapply for admission to the United States

16  and found none. Such testimony is inadmissible under Federal Rules of Evidence 401, 403, 702, 802, 1002,

17  and its admission would violate Mr. Martinez' rights to a fair trial and to confront witnesses under the Fifth

18  and Sixth Amendments.

19  The best evidence rule provides that the **original** of a "writing, recording, or photograph" is required

20  to prove the contents thereof. Fed.R.Evid. 1002. A writing or recording includes a "mechanical or

21  electronic recording" or "other form of data compilation." Fed.R.Evid. 1001(1).

22  An "original" of a writing or recording is the writing or recording itself or any counterpart
intended to have the same effect by a person executing or issuing it....If data are stored in a
23  computer or similar device, any printout or other output readable by sight, shown to reflect
the data accurately, is an "original."

24

25  Fed.R.Evid. 1001(3).

26  In United States v. Bennett, 363 F.3d 947 (9th Cir. 2004), a case out of this district, the defendant

27  was charged with importation of marijuana and importation with intent to distribute. The agent testified that

28

07CR3101-LAB

1   the boat, which was found in United States' waters, had traveled into the United States from Mexico, based

2   on data the agent saw on the ship's global positioning system.  The Court found that the best evidence rule

3   applies in cases, like this one, "when a witness seeks to testify about the contents of a writing, recording or

4   photograph without producing the physical item itself-particularly when the witness was not privy to the

5   events those contents describe."  Id. at 953 (citing Fed.R.Eivd. 1002 Advisory Committee's note).  The

6   Ninth Circuit held that based on the best evidence rule, the district court committed reversible error by

7   allowing the introduction of this testimony.  Id. at 956.

8          Here, it is anticipated that the government will seek to establish that an I-212 form was not submitted

9   based on an agent's alleged review of data contained on a government database.  Under Rule 1002, however,

10  the best evidence  is the database itself, or a report generated from the database, not an agent's testimony.

11  Therefore, the introduction of this testimony is violative of the Rule 1002.

12         Moreover, as explained previously, under the Fifth and Sixth Amendments, a defendant has a

13  constitutional right to a fair trial and to confront witnesses.  Additionally, evidence must be relevant and not

14  create confusion or be prejudicial.  Fed. R. Ev. 401, 403.  Finally, no lay witness is permitted to offer an

15  opinion or testify about specialized knowledge.  Fed. R. Ev. 702; United States v. Figueroa-Lopez, 125 F.3d

16  1241, 1245 (9th Cir. 1997) (expert opinion need not be based upon highly technical knowledge; it may be

17  based upon knowledge which would be "unfamiliar" to "the ordinary juror").

18         The A-file custodian's testimony regarding database searches violates these rights on several levels.

19  For example, it is unlikely that the A-file custodian has herself inputted the information she allegedly

20  searches for into the databases she testifies about; rather, she is testifying about what other persons have

21  inputted (or failed to input).  Accordingly,  the A-file custodian has no personal knowledge whatsoever

22  regarding why information regarding Mr. Martinez does or does not appear in these systems but is instead

23  testifying from the hearsay statements of other people who were not presented by the government for cross-

24  examination by Mr. Martinez.

25         Equally troubling, the A-file custodian is not a database or immigration expert, and it is expected that

26  the government will not qualify the A-file custodian as an expert in this regard.  Nor will the government

27  provide the defense with expert notice as required by Federal Rule of Evidence 702.  Yet, it is clear that

28

07CR3101-LAB

1  searching complex government databases for specialized information reflecting legally-complex immigration

2  procedures requires specialized knowledge far outside the ken of a lay witness. Finally, the A-file

3  custodian's testimony regarding database searches yielding no evidence of permission to reapply for

4  admission can only serve to confuse the jury and prejudice Mr. Martinez. By allowing the A-file custodian

5  to testify in a conclusory manner regarding searches she is not qualified to perform, this Court virtually

6  ensures that the jury will give the A-file custodian's testimony far more weight than it is due.

7                                               **XI.**

8  **THIS COURT SHOULD PRECLUDE REFERENCE TO THE EVENTS OF SEPTEMBER 11
   AND/OR THE WAR AGAINST TERRORISM**

9

10          This testimony and argument is simply inadmissible under Federal Rules of Evidence 401, 402 and

11  403. Terrorism has nothing to do with this case. A court of law is not the appropriate forum for discussions

12  about the means utilized to combat terrorism when the issue before the court has nothing to do with

13  terrorism. This Court should preclude such argument or testimony in this trial.

14                                              **XII**.

15  **THIS COURT SHOULD ORDER PRODUCTION OF GRAND JURY TRANSCRIPTS**

16          The Court should order production of grand jury transcripts if a witness who likely will testify at

17  the trial of Mr. Martinez also is likely to have testified before the grand jury. <u>Dennis v. United States</u>, 384

18  U.S. 855 (1966); Fed. R. Crim. R. 26.2(f)(3). The defense requests that the government make such

19  transcripts available in advance of trial to facilitate the orderly presentation of evidence and to remove any

20  need for recess in the proceedings for defense counsel to examine the statements pursuant to Federal Rule

21  of Criminal Procedure 26.2(d).

22                                              **XIII.**

23  **THIS COURT SHOULD PRECLUDE EVIDENCE NOT PRODUCED DURING DISCOVERY**

24          Mr. Martinez has made a number of discovery requests in this case, and, pursuant to Federal Rule

25  of Criminal Procedure 16(a)(1)(E), in his pre-trial motions. Pursuant to Rule 16(d)(2), Mr. Martinez requests

26  that the Court prohibit introduction at trial of any documents not yet produced in discovery.

27

28
                                               12                                    07CR3101-LAB

1    Furthermore, pursuant to Federal Rule of Criminal Procedure 12(b)(4), Mr. Martinez requests that

2    the Court order the government to provide him with prompt written notice of its intention to use any

3    discoverable evidence in its case-in-chief.

4    **XIV.**

5    <u>**THE GOVERNMENT AND ITS WITNESSES SHOULD BE PREVENTED FROM VOUCHING**</u>

6    Impermissible vouching must not be allowed during the government's case-in-chief or during the

7    government's closing argument.  "Vouching consists of placing the prestige of the government behind a

8    witness through personal assurances of the witness's veracity, or suggesting that information not presented

9    to the jury supports the witness's testimony" <u>See</u> <u>United States v. Necoechea</u>, 986 F.2d 1273, 1276 (9th

10   Cir.1993).  The Supreme Court has held:

11       The prosecutor's vouching for the credibility of witnesses and expressing his personal
         opinion concerning the guilt of the accused pose two dangers: such comments can convey
12       the impression that evidence not presented to the jury, but known to the prosecutor, supports
         the charges against the defendant and can thus jeopardize the defendant's right to be tried
13       solely on the basis of the evidence presented to the jury; *and the prosecutor's opinion
         carries with it the imprimatur of the Government and may induce the jury to*
14        *trust the Government's judgment rather than its own view of the evidence.*

15   <u>Berger v. United States</u>, 295 U.S. 78, 88-89 (1935).  Similarly, the Ninth Circuit has "consistently cautioned

16   against prosecutorial statements designed to appeal to the passions, fears and vulnerabilities of the jury . . . ."

17   <u>United States v. Weatherspoon</u>, 410 F.3d 1142, 1149 (9th Cir. 2005).  As the Ninth Circuit has explained:

18       A prosecutor may not urge jurors to convict a criminal defendant in order to protect
         community values, preserve civil order, or deter future lawbreaking. The evil lurking in such
19       prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to
         his own guilt or innocence. Jurors may be persuaded by such appeals to believe that, by
20       convicting a defendant, they will assist in the solution of some pressing social problem. The
         amelioration of society's woes is far too heavy a burden for the individual criminal defendant
21       to bear.

22   <u>United States v. Koon</u>, 34 F.3d 1416, 1443 (9th Cir.1994), quoting <u>United States v. Monaghan</u>, 741 F.2d

23   1434, 1441 (D.C. Cir.1984).  It is also impermissible for government agents to vouch for themselves or each

24   other.  In <u>United States v. Rudberg</u>, 122 F.3d 1199, 1204 (9th Cir. 1997), the Ninth Circuit held that

25   vouching can occur through the testimony of a government agent because the jury might easily identify the

26   agent's position with the integrity of the United States.  In fact, the Court noted that when that happens,

27   vouching occurs in a "very powerful form."  <u>Id.</u>

28

07CR3101-LAB

**XVII.**

**THE COURT SHOULD ALLOW EVIDENCE REGARDING MR. MARTINEZ'S
DIMINISHED CAPACITY**

Mr. Martinez filed a notice of his intent to introduce mental health testimony on January 11, 2008 pursuant to Fed. R. Crim. P. 12.2. See Exhibit A. He gave telephonic notice, followed by a letter to the prosecutor, on February 1, 2008.[2] This notice complies with Fed. R. Crim. P. 12.2.

**A.    Diminished Capacity**

Mr. Martinez's interest and right to present such evidence is well-founded in the instant case. Diminished capacity generally is only a defense when specific intent is at issue. See United States v. Twine, 853 F.2d 676, 680 (9 th Cir. 1988). Specific intent is determined "from all the facts and circumstances surrounding the case." United States v. Sirhan, 504 F.2d 818, 819 n. 2 (9th Cir. 1974). In the context of a diminished capacity defenses, the law of this circuit is that "[d]iminished capacity is directly concerned with whether the defendant possessed the ability to attain the culpable state of mind which defines the crime. Successful defendants simply are not guilty of the offense charged." United States v. Twine, 853 F.2d 676, 678 (9th Cir. 1988.) Accordingly, this Court must determine whether the above statutes require proof of specific intent and should find that they do.

The Ninth Circuit has spoken conclusively to this precise question and repeatedly has held that violations of 8 U.S.C. §§ 1324(a)(2)(B)(ii) and (iii) require specific intent. See United States v. Nguyen, 73 F.3d 887, 894 (9th Cir. 1995); see also United States v. You, 382 F.3d 958, 966 (9th Cir. 2004) (requiring jury instruction that the defendants intended to violate the law in trial for violation of § 1324); United States v. Barajas-Montiel, 185 F.3d 947, 953 (9th Cir. 1999) (following Nguyen and holding that criminal intent is required for conviction of the felony offenses of 8 U.S.C. § 1324(a)(2)(B)). These cases are consistent with the jury instructions for the Ninth Circuit and actually provide the basis for the specific instruction used by the Court. See Ninth Cir. Model Jury Inst. 9.1. In the commentary for that instruction, the Ninth Circuit

---

[2] Doctors Armenta and Heller were unable to produce reports with respect to diminished capacity until late this week. Dr. Heller was unable to visit Mr. Martinez a second time until Thursday, January 31, 2008 due to scheduling the interview room at the MCC. Hence, defense counsel gave notice to the government as soon as reasonably possible given the Court's unexpected holding that Mr. Martinez is competent, subsequently scheduling trial to occur one week later.

1    cites to Nguyen and Barajas-Montiel and cite their holdings that intent to violate the law is an element of

2    the offense.  Accordingly, ample support exists regarding Mr. Martinez's right to present a diminished

3    capacity defense and this Court should allow Mr. Martinez to provide evidence regarding his diminished

4    capacity.

5           The Ninth Circuit's general rule is that an attempt requires the "inten[t] to violate the statute." United

6    States v. Hernandez-Franco, 189 F.3d 1151, 1155-56 (9th Cir. 1999) (intent to transport aliens is required

7    for attempt conviction even though statute does not specify a requirement of intent to transport); (citation

8    omitted).  Therefore, the attempt mens rea should apply to all of the elements of section 1326, thus reflecting

9    the intent to violate the statute, not merely the intent to enter.

10           The support for this position is found the Supreme Court's latest pronouncements, see Carter v.

11   United States, 530 U.S. 255 (2000), as well as recent decisions of this Court,  see United States v. Pernillo-

12   Fuentes, 252 F.3d 1030 (9th Cir. 2001) (reversing because indictment failed to allege specific intent mens

13   rea for attempted reentry);³  United States v. Gracidas-Ulibarry, 231 F.3d 1188 (9th Cir. 2000) (reversing

14   the panel decision in Gracidas-Ulibarry, which accepted the government's argument that only general intent

15   was required for even an attempted illegal reentry).  As Carter makes clear, the presumption of scienter

16   applies to each element of an offense that serves "to separate wrongful from 'otherwise innocent conduct.'"

17   Id. at 256-57.  Thus, here a specific intent, in the form of willfulness and knowledge, must attach to each

18   such element. Id. at 267-68.  Here, it is "otherwise innocent conduct" for an alien to be in the United States.

19   Even a deported alien may enter.  It is only when the deported alien, knowing these facts, lacks permission

20   to reapply that the conduct becomes wrongful.  Thus, under Carter, the government must allege knowledge

21   of alienage, deportation, and lack of permission as well as intent to enter.  Id..  Similarly, Staples v. United

22   States, 511 U.S. 600 (1994), which addressed the *mens rea* requirement for the offense of possessing a

23   machine gun in violation of 26 U.S.C. § 5861(d), notes *mens rea*.  Observing that statutory silence "does

24   not necessarily suggest that Congress intended to dispense with a conventional *mens rea* element, which

25   would require that the defendant know the facts that make his conduct illegal," 511 U.S. at 605, Staples

26

27           ³  Pernillo-Fuentes is particularly relevant as it stands for the proposition that even *implied* mens
     rea elements must be alleged in the indictment.

28
                                                    15                                07CR3101-LAB

found that "[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." Id. (citing United States v. United States Gypsum Co., 438 U.S. 422 (1978) and Morissette v. United States, 342 U.S. 246 (1952)); accord Carter, 120 S. Ct. at 2169; United States v. X-Citement Video, Inc., 513 U.S. 64, 72 (1994); Liparota v. United States, 471 U.S. 419, 426 (1985).

In a recent Ninth Circuit case, expert testimony regarding "willfulness" was deemed admissible under Federal Rules of Evidence 702 and 704(b). United States v. Cohen, 510 F. 3d 1114 (9th Cir. December 26, 2007). In that case, the district court disallowed Mr. Cohen from presenting an expert to testify that he lacked the intent to "'willfully' assist in the filing of a false [tax] return." Id at 1123-24. The Ninth Circuit held that the district court abused its discretion in precluding Mr. Cohen from presenting that testimony. Id at 1124-27. The Ninth Circuit adopted the reasoning of United States v. Finley, 301 F. 3d 1000 (9th Cir. 2002), and held that the expert's testimony would have "assisted the trier of fact within the meaning of Rule 702." Id at 1124. The same reasoning applies to Mr. Martinez's case-- the testimony of doctors Armenta and Heller that Mr. Martinez has an abnormal belief system (i.e**. he believes that he has a legal right to be in the United States due to his "Indian" heritage**) that he has "a tendency to cling doggedly to [his] beliefs even in the face of overwhelming contradictions." Id. This testimony will assist the jury in its determination of whether Mr. Martinez had the specific intent to *illegally* enter the United States. Supra.

## XVIII.

### THIS COURT SHOULD GRANT MR. MARTINEZ LEAVE TO FILE FURTHER MOTIONS

Mr. Martinez requests leave to file further motions as may be necessary.

//

//

//

//

//

//

## IX.

## <u>CONCLUSION</u>

For the foregoing reasons, and for such other reasons as may appear at the hearing on these motions, Mr. Martinez respectfully requests that the Court grant his motions, and accord such other relief as this Court deems just.

Respectfully submitted,

Dated: February 1, 2008

*/s/ Stephen D. Demik*
**STEPHEN D. DEMIK**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Martinez

07CR3101-LAB